EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* IRENES DÍAZ, acusado y apelante.

No. 2587.—*Visto:* Marzo 2, 1926. *Resuelto:* Marzo 26, 1926.

1. SODOMÍA—PROCESO Y CASTIGO—ACUSACIÓN—SU SUFICIENCIA—ACUSACIÓN QUE SIGUE LAS PALABRAS DEL ESTATUTO.—Una acusación basada en el artículo 278 del Código Penal, que en su redacción sigue las palabras del estatuto, es suficiente.

2. SODOMÍA—PROCESO Y CASTIGO—ACUSACIÓN—SU SUFICIENCIA—ALEGACIÓN DEL SEXO DE LA PARTE PERJUDICADA.—En una acusación basada en el artículo 278 del Código Penal, no es necesario alegar el sexo con quien se ha verificado el hecho.

3. SODOMÍA—PROCESO Y CASTIGO—EVIDENCIA—EXAMEN DE EXPERTOS—PREGUNTAS SUGESTIVAS (*Leading Questions*) EN EL EXAMEN DIRECTO—NECESIDAD PARA ELLAS.—Tratándose de un experto—médico—no hay necesidad de, ni menos justificación para hacerle, en el examen directo, una pregunta sugestiva que, por su naturaleza pueda en el jurado levantar prejuicios en contra del acusado, especialmente cuando los hechos que se quieren obtener del testigo no son tales que no puedan ser revelados mediante un interrogatorio hábil y adecuado.

4. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—RESOLUCIÓN Y DISPOSICIÓN DEL CASO—REVOCACIÓN DE LA SENTENCIA APELADA—ERROR PERJUDICIAL EN LA ADMISIÓN DE PRUEBAS.—Cuando de los autos nada consta que demuestre que un juez, al dirigir y regular el interrogatorio de testigos estuvo justificado de variar la regla general porque se rige el interrogatorio directo —admitiendo una pregunta sugestiva perjudicial—procede revocar la sentencia apelada.

SENTENCIA de *Rafael Díaz Cintrón, J.* (Ponce), condenando al acusado por delito contra natura, con costas. *Revocada y devuelto el caso.*

*Carlos Brunet del Valle,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

Un jurado declaró culpable al acusado del infame crimen contra natura y la corte inferior le condenó a sufrir la pena de cinco años de presidio. De esta sentencia se apela, apuntándose como primer error que la acusación no aduce hechos suficientes contra el acusado porque ella no contiene en lenguaje conciso y corriente una exposición clara de los actos constitutivos del delito y no se alega por otra parte que Anastasio Ramos, sujeto pasivo, era un varón.

[1] La acusación tal como fué formulada dice así:

"Mediante esta información el Gran Jurado del distrito judicial de Ponce, P. R.. acusa a Irenes Díaz del delito contra natura (*felony*) cometido del modo siguiente: El referido Irenes Díaz el día 22 de octubre de 1924 y en el distrito de Ponce, P. R., ilegal y voluntariamente, realizó con Anastasio Rosado, el infame crimen contra natura, . . ."

Esta acusación se basa en el art. 278 del Código Penal, pudiendo verse que en su redacción se siguen las palabras

del estatuto.    Las autoridades están contestes que una acusación así formulada es suficiente.

"Se ha resuelto que el término 'sodomía' describe suficientemente el delito y por consiguiente también el 'infame delito contra natura.'"    1 Wharton's Criminal Law, p. 549.

"Es cierto que cuando un delito está definido por el estatuto en términos genéricos, sin mencionar los actos determinados que lo constituyen, se ha resuelto, como excepción a la regla general, que no es suficiente imputarlo en el lenguaje de la definición sino que deben expresarse los actos determinados que constituyen el delito denunciado.    Pero dada la naturaleza vil y degradante de este delito, siempre ha sido una excepción a las reglas estrictas que exigen gran particularidad y certeza inequívoca en las alegaciones criminales tanto en el derecho común como cuando los delitos son enteramente estatutorios.    Nunca ha sido la práctica usual describir la forma determinada o los detalles de la comisión del acto, y cuando el delito es estatutorio su expresión en los términos del estatuto o en forma tan clara que su naturaleza sea fácilmente comprendida es todo lo que se exige."    8 R.C.L. p. 335.

[2] La proposición del apelante de que en todo caso la acusación debía consignar que el perjudicado era un varón, la funda el apelante en el caso de *People* v. *Caroll,* 1 Cal. App. 2, 81 Pac. Rep. 680.

El Fiscal sostiene que el caso citado está equivocado porque el delito de que se trata puede cometerse indistintamente con hombre o mujer.    Aunque esta conclusión del fiscal es correcta, no siendo necesario alegar el sexo con quien se ha verificado el hecho, 8 R.C.L. 335–36, el caso de *Caroll, supra,* no ha sido bien interpretado por una y otra parte.    En la acusación no se seguían las palabras del estatuto sino que se hacía una descripción de los actos realizados por el acusado, y la corte dijo:

"Una acusación que imputa al acusado la comisión de un delito contra natura con y sobre determinada persona con quien allí y entonces tuvo contacto carnal, es fatalmente defectuosa por no alegar que dicha persona era un varón, pues la frase 'contacto carnal' significa relación sexual."    *People* v. *Caroll,* 1 Cal. App. 2, 81 Pac. Rep. 680.

No puede esta decisión tener alcance alguno en una acusación que siga en sus términos al estatuto en sentido de hacer indispensable alegar el sexo de la persona perjudicada, ni tampoco podía sostenerse que su interpretación sea errónea en cuanto al significado que da a ciertas palabras en una acusación que describe los actos realizados por el acusado con la víctima.   No existe, pues, el error imputado en cuanto a la forma de la acusación.

[3] El error que consideramos que realmente fué cometido, se refiere a cierta excepción tomada por el apelante mientras declaraba el perito médico.   El récord en ese extremo describe lo siguiente:

"Fiscal:  ¿Ud. vió a este niño allá por el 24 de octubre de 1924? —R. Sí, señor.—P. ¿Qué examen le hizo Ud. a este niño?—R. Le hice un examen en el ano y en el recto.—Tenga la bondad de explicarle aquí a los Sres. del Jurado cuál fué el resultado de su examen. —R. Pues este niño tenía alrededor del ano una laceración como de una pulgada de largo que le penetraba dentro, pasaba por el esfinter del ano hasta dentro en el recto, era una herida superficial, no era profunda, y además tenía otra herida abajo, partiendo del ano también hacia afuera y varias excoriaciones alrededor; tenía eso muy dolorido, se quejaba mucho cuando yo lo examinaba.—¿Esas laceraciones pudieron ser producidas por el pene de un hombre?— Defensor:  Nos oponemos y protestamos de la pregunta del compañero; el compañero no ha debido hacer esa pregunta porque es altamente sugestiva y perjudicial a los derechos del acusado.—Fiscal: Que resuelva la Corte.—Juez:  El fiscal puede preguntar al Sr. perito que exprese todo lo que tenga relación con este caso.   Puede hacerlo porque se trata de un perito a quien se pueden hacer preguntas de esta naturaleza.—Defensor:  Tomamos excepción.—Fiscal: ¿Puede ser eso producido por la penetración del pene de un hombre? —R. Pudo haber sido producido.—Explique sin necesidad de preguntas, todo lo que Ud. vió y a qué conclusión llegó usted.—R. Eso tiene que haber sido producido por la introducción de un cuerpo extraño, lo más probable desde luego, es un pene, porque si hubiera sido algo de madera le hubiera hecho algo más.—Defensor: Pedimos que se elimine la manifestación del perito en cuanto a mencionar el pene porque su misión no es mencionar el instrumento exacto, en este caso creemos que se ha salido de la misión del perito al men-

cionar la palabra pene.—Juez: Un perito puede declarar sobre lo que estime y el alcance de su examen y las conclusiones a que ha podido llegar según su apreciación y sus conocimientos científicos.— Defensor: Tomo excepción.''

No parece necesario discutir que la pregunta del Fiscal al perito médico, que objetó la defensa y de la que tomó excepción, es realmente sugestiva. El fiscal fué insistente en su pregunta con igual protesta y excepción por la defensa. La pregunta y la respuesta tenía por objeto conectar al acusado con la realización del delito y de ahí la importancia y materialidad de la pregunta, sugiriéndose además la contestación deseada o una simple negación o afirmación. La ley de evidencia define lo que se puede entender por una pregunta capciosa y su prohibición de hacerla en un interrogatorio directo, a menos que circunstancias especiales lo exigieren y fuere conveniente a los fines de la justicia. El artículo 153 de dicha ley dice:

''Art. 153.—Una pregunta que sugiera al testigo la respuesta deseada por la parte examinante se denomina pregunta capciosa. En un interrogatorio directo no se permiten las preguntas capciosas, a no ser que a juicio del tribunal, bajo circunstancias especiales, resultaren convenientes a los intereses de la justicia.''

La cuestión que sigue es determinar si la pregunta está comprendida en algunas de las excepciones que admiten las autoridades, y de su estudio podemos deducir que no estamos en un caso excepcional. Se trata de un experto a quien hay que presumir que es una persona hábil e inteligente y no puede verse la necesidad ni menos la justificación de hacerle una pregunta sugestiva que por su naturaleza en relación con la clase de delito podía excitar su natural repugnancia en la mente de los jurados y levantar prejuicios en contra del acusado. Por el mismo carácter degradante y vil del delito, es humano pensar que se puede formar una convicción por una mera conclusión presentada ante el jurado en forma irregular, y los hechos que se querían obtener del

testigo no eran tales que no pudieran ser revelados mediante
un interrogatorio hábil y adecuado.

En el caso de *Turney* v. *State,* 47 Am. Dec. 75, se hace
un análisis tan amplio e ilustrativo de la definición de pre-
guntas capciosas (*leading questions*), sus excepciones en un
interrogatorio directo, así como del alcance en materia cri-
minal del poder discrecional de las cortes en ese punto, que
por ser la mejor expresión de la ley, sus principios son en-
teramente aplicables.    Entre otros párrafos, la corte se ex-
presa así:

"A menudo es muy difícil distinguir aquellas preguntas que no
deben ser permitidas por su tendencia capciosa de las que aunque
en la forma son capciosas en efecto solamente dirigen la mente del
testigo a la materia objeto de investigación.    Pero si bien es impo-
sible establecer ninguna regla fija que pueda servir en todos los ca-
sos, existen sin embargo ciertas reglas establecidas sobre la materia
de preguntas capciosas que proporcionan un buen medio de prueba
para distinguir los casos que no son muy dudosos.    Por ejemplo, es
una pregunta capciosa la que sugiere al testigo la contestación de-
seada: 1 Stark on Evid. 124; 2 Ph. on Ev. 722; The People v.
Mather, 4 Wend. 249 (21 Am. Dec. 122).    Y también es una pre-
gunta capciosa la que asume un hecho como probado que no ha sido
probado.    También es capciosa una pregunta que envolviendo un
hecho material admite una contestación mediante una simple nega-
ción o afirmación.    La segunda constituye un motivo de pregunta
argumentativo que la ley declara está sujeta a objeción.    1 Greenl.
on Ev., sec. 434.

"Por otra parte, sin embargo, existen excepciones a la regla que
prohibe que se hagan a un testigo preguntas capciosas en su interro-
gatorio principal; como cuando él es manifiestamente reacio y hos-
til al interés de la parte que lo llama o cuando ha agotado su me-
moria, sin exponer el particular que se interesa, cuando es un nom-
bre propio, u otro hecho, al cual no puede llegarse mediante un in-
terrogatorio general o cuando el testigo es un niño de pocos años
cuya atención no puede llamársele de otro modo a la materia en cues-
tión: Moody v. Rowell, 17 Pick. 498 (28 Am. Dec. 317).    *    *    *

"Si bien el principio de ley por fortuna está determinado en el
sentido de que siendo a menudo necesario es por tanto admisible
poner la mente de un testigo en contacto con la materia que se inves-

tiga, especialmente cuando se interroga a un testigo con respecto a alguna conversación o admisión, es todavía un principio de ley igualmente determinado y fuera del control de la indignación de la justicia pública que en tales preguntas el testigo no debe ser inducido a dar una contestación particular, ni debe hacérsele ninguna pregunta a la cual la contestación 'sí' o 'no' sería concluyente. 1 Stark Ev. 124; Nicholls v. Dowding, 1 Stark 81; Opinión de Lord Ellenborough. Es indudablemente más conveniente preguntar a un testigo si tal cosa fué dicha o ejecutada y las preguntas así hechas en muchos casos podrían hacerse sin peligro de cometer perjurio, aún involuntariamente, y no negamos que tal fuera el resultado en el caso mismo que estamos considerando; y existen también casos en los cuales tales preguntas capciosas son pertinentes, como ya se ha indicado antes; pero en casos corrientes ciertamente que es más compatible con la honradez y justicia, así para el testigo como para el acusado, preguntar al testigo lo que se hizo y dijo, en vez de si una cosa esencial y particular fué hecha o dicha. Nos vemos obligados por tanto a llegar a la conclusión de que las preguntas hechas a Mary Folkes y que han sido examinadas se ajustan a la defensa legal de preguntas capciosas.

✻ ✻ ✻ ✻ ✻ ✻ ✻

"Habiéndose determinado, pues, que las preguntas capciosas se hicieron a la testigo, y que no eran esenciales a los fines de la justicia en este caso, queda únicamente por investigar en relación con esto si esta corte intervendrá con la facultad discrecional que se admite es inherente a las cortes que dirigen el interrogatorio de testigos. Es cierto que se ha sostenido en las cortes *nisi prius* de Inglaterra que las reglas de evidencia son exactamente las mismas en casos civiles y criminales y que en ambos queda a la discreción del juez permitir hasta dónde llegue el interrogatorio directo de un testigo mediante preguntas capciosas, o, en otras palabras, hasta dónde asumirá la forma de un interrogatorio de repreguntas: Regina v. Murphy and Douglas, 8 Car. & P. 297. Pero las decisiones arriba citadas de este país en las que se ha resuelto que la cuestión de discreción judicial relativa al interrogatorio de testigos no era tal que en ella pudiera basarse una solicitud de nuevo juicio o pueda alegarse como error, se dictaron en casos civiles y no criminales. Sin embargo, en el caso de *Duncan v. McCullough, Administrador,* 4 Serg. & R. 482, que fué una acción civil, la Corte Suprema de Pennsylvania admitiendo la regla de que la forma de interrogar testigos es cuestión que descansa grandemente en la discreción de la corte que preside el juicio, llama la atención a que consideraría la

cuestión de si ese modo de proceder daría lugar a una revocación por error en cuanto a un punto en que la ley permite que la corte inferior ejercite su discreción con tal que apareciera que había habido cualquier abuso de discreción. En el caso de *The People* v. *Mather*, 4 Wend. 247 (21 Am. Dec. 122), que fué un caso en que se presentó una acusación por conspiración en el rapto de William Morgan, la corte, si bien también admite la doctrina de que una gran discreción tiene el juez que preside un juicio para dirigir y regular el interrogatorio de los testigos, y que las cortes de apelación deben evitar cautelosamente intervenir con el debido ejercicio de esta discreción, sin embargo, se resolvió que si se ha infringido una regla establecida de la ley, la parte perjudicada tiene el derecho innegable a obtener un remedio y que la corte no tendría inconveniente alguno en concederlo. La regla así sentada por la Corte Suprema de New York parece estar muy en armonía con el objeto de la justicia pública, que es más para la protección del inocente que para el castigo del culpable.''

El fiscal, con el fin de demostrar que no se cometió el error que se discute, cita los casos de *People* v. *Brown,* 19 N. W. 172, y *People* v. *Morine,* 138 Cal. 626. La cuestión levantada en el primero fué la de preguntas hipotéticas que se le hicieron a un médico en sentido de si en su opinión los hechos asumidos constituían violación, y se resolvió que era impropio el interrogatorio por referirse a puntos de orden legal que no eran del conocimiento médico del testigo. El caso indica, dice la opinión de la corte, que ''ésta no fué la única ocasión semejante, y la práctica de presentar los abogados a los testigos estas hipótesis merece enérgica censura. En la mayor parte de los casos se pide a un testigo que usurpe las funciones del jurado, y ello puede a menudo llevar a los jurados a olvidar sus propias atribuciones y aceptar conclusiones que ellos deben formar por sí mismos.''

De esto puede notarse que el caso es más bien adverso al fiscal, pues lo mismo podría decirse de lo ocurrido en el presente caso, pues la contestación del médico a la pregunta que hemos calificado de sugestiva, era una conclusión a la que podía haber llegado el jurado por la evidencia presentada o circunstancias que surgían de la misma.

Es de advertir además que si bien en el caso de *Brown, supra,* no se revocó la sentencia, fué porque las preguntas que fueron objetadas envolvían, como hemos dicho, cuestiones legales, y el razonamiento de la Corte Suprema de Michigan en ese punto es como sigue: ''En el presente caso se pidió al testigo que usurpara las funciones de la corte y no del jurado. Su opinión, al ser expresada, resultó ser correcta de acuerdo con la ley, y no podemos revocar una sentencia porque la ley haya sido expresada correctamente en presencia del jurado, por quienquiera que sea. El error fué subsanado por la contestación. Pero es mejor que la ley sea explicada al jurado exclusivamente por el instructor legal del jurado.''

En el segundo caso de *Morine, ante,* se trataba de un homicidio y las cuestiones que surgieron se referían a la cualificación de testigos como peritos y no a la materia de preguntas que pudieran envolver el carácter de sugestivas. No vemos la relación que puedan tener con este caso. 138 Cal. 629.

Por otro lado, hemos encontrado en el caso de *International & G. N. R. Co.* v. *Bibolet,* 57 S. W. 974, mantenido el principio de que preguntas hechas a un médico que podían ser contestadas ''sí'' o ''no,'' o que ellas mismas sugerían la contestación deseada, se considerarán sugestivas, y sostenidas las objeciones del apelante la sentencia inferior fué revocada.

En conclusión, nada consta que demuestre en este caso, que el juez inferior estuvo justificado de variar la regla general por que se rige el interrogatorio directo y cometió error al permitir la pregunta que fué excepcionada.

*Por todo lo expuesto la sentencia apelada debe ser revocada y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Presidente Sr. del Toro disintió.