EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANK MONTOYA MONTOYA, acusado y apelante.

*Números:* CR-64-470,     *Resueltos:* 14 de febrero de 1968
CR-64-471,
CR-64-472.

*E. Armstrong de Watlington, Edna Abruña Rodríguez* y *Enrique Miranda Merced,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Adaljisa Díaz de Collazo, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Se acusó a Frank Montoya Montoya de hacerle disparos de pistola a Roberto Escobar Vélez con intención de matarlo, hiriéndole en la pierna izquierda. También de infracción a la Ley de Armas, grave y menos grave.

El Doctor Oscar Abriles declaró que en 30 de junio de 1960 atendió a Escobar de una herida de bala en la pierna izquierda con orificio de entrada y salida.

Jorge Clemente París declaró que el 30 de junio de 1960 frente al Muelle Núm. 3 de San Juan y mientras cruzaba la avenida con Escobar y otros, les hicieron tres disparos desde otro grupo situado al lado opuesto. Vio al acusado Montoya disparar con una pistola que se sacó de la cintura, cargó y disparó. Le hizo un disparo a Escobar hiriéndolo, y al apuntar al testigo éste se escondió debajo de un carro. Después de disparar Montoya se fue corriendo, perseguido por un sargento de la Policía y otros agentes. No hubo provocación por parte del agredido. El hecho ocurrió mientras el grupo en que iban el testigo y el herido se disponía a montar un piquete con cartelones de la S.I.U. frente a *El Imparcial,* en donde había un estado de huelga. El testigo identificó la pistola y fue admitida en evidencia.

A preguntas de la defensa dijo haberle declarado al fiscal que al acercarse su grupo el apelante se paró (había dicho que estaba sentado), se separó de los demás de su grupo

y dijo: "No den un paso más para adelante." Al dar un paso Escobar el acusado cargó la pistola y apuntó de frente. La expresión de "no den un paso para adelante" la ratificó el testigo en corte.

El sargento de la Policía Amilcar Hernández declaró que el apelante daba vueltas por el sitio en un automóvil; que se estacionó, abrió la puerta y se quedó sentado en el vehículo. Oyó tres tiros. Miró hacia el sitio de los disparos y vio a un hombre con un arma de fuego en el centro de la calle. Era el apelante y apuntaba para el sitio donde había un grupo de personas y volvió a disparar otra vez y de ahí salió un hombre aguantándose una rodilla, corriendo, y cayó en el centro de la Avenida Fernández Juncos. Señaló a Montoya como la persona que disparó. Le pidió que soltara el arma pero aquél corrió entonces con la pistola en la mano. El testigo lo persiguió a cinco o seis pies; siguió corriendo por varias calles y al llegar al portón del fondo de un almacén puso la pistola en una mesa y alzó las manos. Mientras corría Montoya por momentos miraba para atrás y apuntaba al testigo con el arma. La pistola tenía cuatro balas sin disparar. El testigo identificó la admitida en evidencia como el arma que ocupara. No oyó otros disparos ni vio a nadie más allí que tuviera un arma de fuego, inclusive Escobar. El apelante le pidió protección al ser arrestado.

Contrainterrogado, dijo que Montoya era la única persona en el centro de la calle con un arma en la mano, y negó que al ocupar la pistola se le zafaran dos tiros. Encontró los tres casquillos de las balas disparadas en el sitio de los disparos, y los identificó como evidencia. Escobar fue herido en el segundo disparo hecho por el acusado. Al echar a correr el grupo el acusado se volvió y disparó otra vez.

El apelante declaró que el testigo Clemente París venía con otras personas con cuartones en las manos y le tiró un palo, les entraron a palos y se formó una pelea como de 30 personas. Clemente le agredió y él logró quitarle el cuar-

tón y con el mismo le dio por la espalda. Ahí oyó una explosión y corrieron todos, inclusive él, con el cuartón en la mano. Alguien le corría detrás. Clemente se metió debajo de un automóvil. Un grupo le quería agredir después de la carrera y él le pidió protección al Sargento Hernández. Dijo que el Sargento Hernández lo seguía con una pistola en la mano y que le pidió la desarmara. El se negó y el Sargento se puso a "bregar" con la pistola y se le salieron dos tiros. Dijo que no conocía a Escobar ni nunca lo había visto.

El récord demuestra que estos hechos ocurrieron durante un estado de huelga en el periódico *El Imparcial,* en que había piquetes y la intervención de dos uniones rivales. El grupo de Montoya pertenecía a una unión rival a la unión del grupo a que pertenecía el agredido.

Los fallos condenatorios fueron rendidos por un tribunal de derecho.

En esta apelación, el único error que señala el apelante es:

"De la prueba presentada, no surge la intención específica necesaria para constituir un delito de ataque para cometer asesinato."

Se arguye que no se demostró por la prueba que el apelante tuviese la intención específica de matar, y que más bien puede inferirse que su intención "coincide" con la definida en el delito de acometimiento y agresión.

■ El Art. 218 del Código Penal—ed. 1937—dispone que toda persona que agrediere a otra, *con intención de cometer asesinato,* incurrirá en reclusión . . . . Asesinato—Art. 199, es *dar muerte ilegal* con malicia premeditada. El Art. 218 castiga por lo tanto la agresión con intención de dar muerte ilegal con malicia. Véase: *Pueblo* v. *Palóu,* 80 D.P.R. 364, 387 (1958).

Acometimiento y agresión es todo acto ilegal de inferir daño violento a un semejante con la intención de causarle

daño. Es grave . . . cuando se cometiere con armas mortíferas. Ley de 10 de marzo de 1904—33 L.P.R.A. sec. 821.

◼ Convenimos en que el delito de agresión para cometer asesinato requiere una intención de dar muerte—Art. 218, *Pueblo* v. *Palóu*, supra, y casos ahí citados. *Pueblo* v. *Rosario Centeno*, 90 D.P.R. 874 (1964), y no meramente de causar daño.

◼ Pero la intención, según reza el Art. 12 del Código Penal, se manifiesta por las circunstancias relacionadas con el delito, y el sano juicio y discreción del acusado; y una intención maliciosa se presume por la manera y deliberación con que se intente o cometa un acto ilegal con el propósito de perjudicar a otro.

◼ Malicia, elemento del asesinato, denota entre otras cosas, la esciente infracción de la ley, en perjuicio de otro. Art. 559 Código Penal.

◼ Como elemento subjetivo que es, la intención surge de las circunstancias que concurren en el hecho delictivo, y la de matar surge, cuando se ataca a una persona con una arma mortífera en tal forma que natural, probable y razonablemente ha de ocasionar su muerte *o poner en peligro su vida. Pueblo* v. *Tribunal de Distrito*, 74 D.P.R. 838 (1953) ; *Pueblo* v. *Palóu*, supra; *Pueblo* v. *Santiago*, 54 D.P.R. 167 (1939).

◼ Indudablemente, bajo una acusación de agresión para cometer asesinato podría haber una convicción de acometimiento y agresión grave. Una cuestión de intención.

◼ La evidencia en el récord, según fuera creída, dirimida y apreciada por la Sala sentenciadora, no nos autorizaría a dictaminar que existe una ausencia total de prueba sobre los elementos de una intención de matar; o que la forma en que el apelante usó el arma y disparó tres veces no ponía en peligro la vida del agredido y demás personas junto a él. *Pueblo* v. *Tribunal de Distrito*, supra.

No habiendo tal ausencia de prueba en el récord no hay porqué intervenir con la apreciación que de la misma hiciera la Sala sentenciadora en cuanto a una intención de cometer asesinato.

*Se confirmarán las sentencias apeladas.*