EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANGEL LUIS MARÍN VEGA, acusado y apelante.

*Número:* CR-76-70        *Resuelto:* 26 de enero de 1977

*Heyda Vigil McClin,* abogada del apelante; *Ramón Armstrong, Jr., Procurador General Interino,* y *Ronaldo Rodríguez Ossorio, Procurador General Auxiliar,* abogados de El Pueblo.

### SENTENCIA

Se confirman las sentencias apeladas. Así lo pronunció y manda el Tribunal y lo certifica el señor Secretario. El Juez Presidente Señor Trías Monge, anunció la sentencia del Tribunal y emitió una opinión a la cual se unen los Jueces Aso-

ciados Señores Rigau, Dávila e Irizarry Yunqué. Los Jueces Asociados Señore Torres Rigual, Martín, Díaz Cruz y Negrón García concurren sin opinión.

(Fdo.) Ernesto L. Chiesa
*Secretario General*

—O—

Opinión emitida por el Juez Presidente Señor Trías Monge.

San Juan, Puerto Rico, a 26 de enero de 1977

Por hechos ocurridos antes de entrar en vigor el nuevo Código Penal se acusó al apelante de los delitos de violación, contra natura, ataque para cometer asesinato, acometimiento y agresión grave, acometimiento grave e infracción al Art. 4 de la Ley de Armas.

Se redujo por el juez el cargo de violación a acometimiento y agresión grave y el jurado rindió veredicto de culpabilidad en todos los cargos. Se sentenció al apelante a seis meses de cárcel en los cargos de acometimiento y agresión grave y Ley de Armas, veinticinco dólares de multa en el de acometimiento grave, de cinco a diez años de presidio en el de contra natura, a cumplirse estas penas concurrentemente entre sí y consecutivamente con la de siete a diez años de presidio que se le impuso en el caso de ataque para cometer asesinato.

El apelante cuestiona básicamente la apreciación de la prueba; la determinación de que el ataque fue para cometer asesinato y no grave daño corporal; la conclusión de que no hubo concurso de delitos en cuanto a tres de las acusaciones; y la constitucionalidad del crimen contra natura.

De la transcripción de evidencia surge prueba suficiente para condenar por cada delito.

La defensa no presentó prueba. De la prueba de cargo se desprende que la señora L. M. Rivera fue a un colmado alrededor de la medianoche a comprar cigarrillos. Allí se encon-

traban su tío, el señor L. Rivera, el señor Elson Figueroa Rivera y el apelante, a quien ella no conocía. El apelante se dirigió a ella y le pidió que se fuera con él. Ella rehusó, salió del lugar e intentó entrar al auto de su tío. El apelante la siguió e insistió en su requerimiento. Al intervenir el tío, el apelante sacó un cuchillo, arañó con él a la joven y la forzó a acompañarlo. Ella pudo escaparse pocos instantes después y regresó al automóvil de su tío, en el que se encontraba también ya el señor Elson Figueroa. El vehículo arrancó, se detuvo poco más adelante para que descendiese el señor Figueroa, pero el apelante logró darle alcance, le infirió una puñalada al señor Figueroa, intentó herir al señor Rivera, pero éste pudo huir, y obligó a la joven a punta de cuchillo, a seguirle monte arriba. Allí tuvo las relaciones sexuales con ella que se le imputaron por el Ministerio Público. Ella no les dijo nada a sus padres, mas al día siguiente se comunicó con las autoridades policiacas. [1]

No hallamos base para intervenir con la apreciación efectuada de hechos. *Pueblo* v. *Colón Obregón*, 102 D.P.R. 369, 372 (1974).

Tampoco tiene razón el apelante cuando alega que en cuanto al caso de ataque para cometer asesinato sólo se probó la intención de causar grave daño corporal. La víctima sufrió una herida profunda en el pecho y tuvo que permanecer recluido tres semanas en el hospital, inicialmente en estado de inconsciencia bajo cuidado intensivo. El acusado, según los

---

[1] Para mayor detalle sobre la prueba relativa a cada delito, véanse, en cuanto al caso G-75-1, por violación, reducido a acometimiento y agresión, las págs. 46 y ss. y 81 y ss. de la transcripción de evidencia. En cuanto al G-75-2, por contra natura, véanse las págs. 47 y 82 y ss. En cuanto al G-75-3, por ataque para cometer asesinato, véanse las págs. 9 y ss., 11, 23, 28, 34 y ss., 45, 76 y ss. y 110 y ss. En cuanto al M-74-3243, por acometimiento y agresión, véanse las págs. 5, 31 y ss., 41 y ss., 70 y ss., 90, 106 y ss. y 118 y ss. En cuanto al M-74-3244, también por acometimiento y agresión, véanse las págs. 12, 45, 79 y 111 y ss. En cuanto al M-74-3242, véanse las páginas citadas. Este último delito se refiere a la violación de la Ley de Armas.

testimonios, intentó herir a su víctima varias veces antes de lograr su propósito. Cuando se ataca a alguien con una arma mortífera de forma tal que pueda ocasionársele la muerte, puede presumirse la intención de matar. *Pueblo* v. *Montoya Montoya*, 95 D.P.R. 703, 707 (1968); *Pueblo* v. *Tribunal de Distrito*, 74 D.P.R. 838, 855-6 (1953).

El tercer planteamiento es también improcedente. No se trata aquí de un solo curso de conducta que puede ser penado por distintas disposiciones de ley. *González* v. *Tribunal Superior*, 100 D.P.R. 136, 143 (1971). Se trata de actos independientes en tiempo que requieren prueba distinta. *Pueblo* v. *López Carrillo*, 101 D.P.R. 259, 261 (1973).

Se cuestiona finalmente la constitucionalidad del Art. 278 del antiguo Código Penal, 33 L.P.R.A. sec. 1118,([2]) el cual dispone:

> "Toda persona culpable del infame crimen contra natura, cometido con un ser humano o con alguna bestia, incurrirá en pena de reclusión de presidio por un término mínimo de un (1) año y máximo de diez (10) años."

Se impugna este artículo por estimarse que viola el derecho a la intimidad y por pecar alegadamente el estatuto de vaguedad e imprecisión. No hay base para discutir el primer motivo de impugnación, ya que no se trata en este caso de una relación consensual y en privado entre adultos. Nos referiremos exclusivamente a la cuestión de la alegada vaguedad de la ley.

En ocasiones anteriores este Tribunal ha sostenido el estatuto ante el mismo ataque. *Pueblo* v. *Díaz*, 35 D.P.R. 230 (1926); *Pueblo* v. *Santiago Vázquez*, 95 D.P.R. 593 (1967). Dichas decisiones nos obligan en este caso. Es nuestro deber señalar, no obstante, que la base teórica de dichas decisiones

---

([2]) El Art. 103 del nuevo Código Penal, 33 L.P.R.A. sec. 4065, provee: "Toda persona que sostuviere relaciones sexuales con una persona de su mismo sexo o cometiere el crimen contra natura con un ser humano será sancionada con pena de reclusión por un término mínimo de un (1) año y máximo de diez (10) años."

se ha ido estrechando seriamente. Johnsen, R., *Sodomy Statutes—A Need for Change*, 13 S.D. L. Rev. 384 (1968). El Art. 278 de nuestro antiguo Código Penal proviene del Art. 286 del Código Penal de California. Ante la crítica creciente al artículo, California enmendó su Código en 1975 para definir el delito de modo más preciso e inteligible. West's Anno. Calif. Codes (Penal), 1976 Supp., sec. 286. Otros estados de la Unión Americana han actuado de igual modo. Véanse, por ejemplo, Ill. Rev. Stat., ch. 38, Art. 11-2 (1962); N.Y. Penal Law, sec. 130.00 (1965); Conn. Penal Code, sec. 53a-65 (1975). Kansas y Minnesota han ido más lejos y han derogado sus leyes referentes a la sodomía. En la actualidad, tan solo la mitad aproximadamente de dichos estados cuentan con estatutos análogos al de Puerto Rico. Note, *North Carolina's Sodomy Statute—A Need for Revision*, 53 N.C. L. Rev. 1037, n. 2; Barnett, *Sexual Freedom and the Constitution*, 23 (1973). El de Puerto Rico ha sido objeto de crítica especialmente severa. García Gregory y Souss Villalobos, *Infame Crimen Contra Natura: Aberración Constitucional*, 40 Rev. Jur. U.P.R. (1971).

Estatutos como el que nos ocupa se han invalidado por razón de vaguedad. *Franklin* v. *State*, 257 So.2d 21 (Fla. 1971); *cf. Stone* v. *Wainwright*, 478 F.2d 390, 397 (5th Cir. 1973) (revocado en 414 U.S. 21 (1973); *Perkins* v. *North Carolina*, 234 F.Supp. 333 (W.D. N.C. 1964); *Commonwealth* v. *Balhazar*, 318 N.E.2d 480 (Mass. 1974); *State* v. *Carringer*, 523 P.2d 532 (Idaho 1974); *Locke* v. *State*, 501 S.W.2d 828 (Tenn. 1973); *Harris* v. *State*, 457 P.2d 643 (Alaska 1969).

Valga aclarar que la terminología del artículo bajo examen arranca básicamente de un estatuto inglés de 1533. 25 Hen. 8, c. 6 (1533). Dicho lenguaje no forma parte de nuestra antigua tradición jurídica. El Código Penal Español de 1870, que regía en Puerto Rico desde 1879 hasta fines de siglo, no contenía una disposición análoga al artículo bajo

examen. Orozco y Arascot, *Código Penal de 1879 para las islas de Cuba y Puerto Rico*, Habana, 1879, Art. 447 y ss., pág. 91 y ss. Para el tratamiento español del problema, véase: García Gregory y Souss Villalobos, *supra*, 404 *et seq.* En la propia Inglaterra se está proponiendo con vigor una nueva reforma de los delitos sexuales, más amplia que la efectuada en 1966, que se rija por el principio, entre otros, de que la conducta prohibida debe especificarse en lenguaje claro inteligible a un lego alfabeto. Brazier, *Reform of Sexual Offenses*, Crim. L. Rev. 421 [1975].

Confirmaría las sentencias apeladas.