EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ALEJANDRO ACOSTA PADILLA, acusado y apelante.

Núm. 7956.—*Sometido:* Enero 25, 1940. *Resuelto:* Febrero 14, 1940.

*P. Nelson Colberg y Enrique Báez García,* abogados del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El apelante fué acusado ante la Corte de Distrito de Mayagüez porque "ilegal, voluntaria y maliciosamente, transportaba, tenía y ofrecía en venta, con el fin de dedicarla al consumo humano, leche de vaca adulterada." En la acusación se alega la reincidencia del acusado, quien fué en el año 1930 convicto del mismo delito, caso núm. 7189 de la misma corte.

Celebrado el juicio, la corte inferior declaró al acusado culpable, condenándole a seis meses de cárcel y a pagar $500 de multa, más las costas; y ordenó la cancelación de su licencia para vender leche. No conforme, apeló el acusado, alegando que la corte sentenciadora erró:

1. Al prohibir que se investigara por el acusado si en las transacciones relacionadas en el caso mediaba dinero, sin que el fiscal suscitara la oposición.

2. Al ordenar que se procediera a probar reincidencia, a pesar del fiscal no disponerse a probarla, demostrando así pasión, prejuicio y parcialidad en contra del acusado.

3. Al negar la suspensión del juicio para que el acusado pudiera traer la prueba de su defensa.

██ El incidente a que se refiere el primer señalamiento ocurrió al declarar el testigo Luis Hernández Aquino, Inspector de Vaquerías. Declaró que vió al acusado en un poblado a la salida del pueblo de Cabo Rojo, llevando la leche en unos porrones pequeños, en los que le quedaban cuatro litros y medio; que el acusado venía pregonando y vendiendo la leche y al ver al testigo huyó; que él intervino y le tomó una muestra, la que fué enviada al laboratorio para su análisis. El abogado defensor le repreguntó así:

"P.—¿Ud. vió interferencia de dinero cuando él entregaba la leche a los vecinos que Ud. dice?

"R.—Eso no se puede ver.

"P.—¿Y por qué sabe Ud. que él la vendía?

"R.—Porque él venía pregonándola.

"P.—¿Pero Ud. vió que algunas de las personas a quienes él le daba la leche le entregaba dinero?

"R.—Hombre, si uno va a ver todos esos detalles...

Intervino entonces el juez, diciendo: "La corte entiende que los agentes que toman una muestra de leche no tienen que ver a la gente que paga." La defensa tomó excepción.

La corte inferior interpretó la ley correctamente. El delito que define la Ley de 12 de agosto de 1925 queda consumado al transportar, tener y ofrecer en venta, con el fin de dedicarla al consumo humano, leche adulterada. La realización de una venta no es un elemento esencial del delito. Basta que el acusado transporte la leche adulterada y que la ofrezca en venta para ser consumida por seres humanos. Siendo esto así, no erró la corte al advertir a la defensa que el Fiscal no estaba obligado a probar la consumación de una venta. El juez está facultado para regular el orden de la prueba, pudiendo llamar la atención de las partes hacia la

pertinencia o impertinencia de las preguntas por ellas formuladas.

■■ Examinemos el segundo señalamiento. Después de haber declarado el químico del Departamento de Sanidad, al efecto de que él había examinado la muestra de la leche tomada al acusado, resultando que la leche tenía un 10 por ciento de agua añadida artificialmente, el fiscal ofreció el testimonio del Inspector de Sanidad Elpidio Pabón Tull. Preguntóle el fiscal si él había visto al acusado en enero 14, 1930, y si para esa época él le recogió unas muestras de leche al acusado, contestando el testigo en la afirmativa. Al preguntar el fiscal "¿Cómo resultó esa leche?," se opuso la defensa, alegando que si lo que se trataba de probar era la reincidencia del acusado, la mejor prueba sería el expediente y el libro de sentencias; y en cuanto a la adulteración de la leche, el informe del análisis químico. Intervino el Juez, preguntando al testigo si él había radicado alguna denuncia contra el acusado. Contestó el testigo que la había radicado ante la Corte de Distrito de Mayagüez. El Juez llamó entonces a la Secretaria de la corte, le ordenó trajera el libro donde consta el caso anterior contra el acusado, y dijo:

"La Corte cree que si se alega la reincidencia y en la acusación se alega el caso en que fué condenado por este mismo delito, y si fué en esta misma Corte, está en nuestras manos verlo para hacerle al acusado completa justicia."

La secretaria trajo el libro de sentencias y el fiscal ofreció como prueba la dictada en el caso núm. 7189 contra Alejandro Acosta Padilla, por un delito de adulteración de leche. Se opuso la defensa, por los alegados motivos de que la sentencia que se ofrecía en evidencia no se refería al mismo delito y porque no se había probado que el acusado en el caso anterior fuese la misma persona acusada en el caso de autos. La corte admitió la prueba y la defensa anotó una excepción. En el alegato no insiste el apelante sobre este punto. Se

queja solamente de que el juez pidiera a la Secretaria la sentencia en el caso anterior, para poder determinar si el acusado era o no un reincidente.

La reincidencia no es uno de los elementos componentes del delito. Es una mera circunstancia agravante que la corte está obligada a tomar en consideración al imponer la pena. En la acusación se alegaba la reincidencia, expresando el número del caso en que el acusado había sido convicto. Cuando el fiscal trató de probar el hecho de la reincidencia con prueba oral, se opuso la defensa, alegando que la mejor prueba era el libro de sentencias. Fué entonces que la corte ordenó que el libro fuese traído a su presencia, sin que aparezca del récord que la defensa se opusiera o tomara excepción. Que el acusado Alejandro Acosta Padilla era el mismo individuo Alejandro Acosta, acusado y convicto en el caso número 7189, quedó claramente establecido por la declaración del inspector Pabón.

El tercer señalamiento presenta una cuestión que merece seria y detenida consideración. Al terminar el fiscal de presentar su prueba, solicitó el abogado defensor un término de cinco días para traer la prueba de la defensa. Denegada la petición, tomó excepción la defensa. Del récord aparece el siguiente diálogo entre el juez y la defensa:

"Lic. Colberg: Nosotros hacemos constar que si no venimos hoy con la prueba de defensa, que es justa y meritoria para tratar de probar la inocencia del acusado, fué porque en este caso el abogado de este acusado consideró dirigirse a la Corte tratando de transar con el Sr. Fiscal del Distrito y con el consentimiento de esta Hon. Corte se convino...

"Hon. Juez: ¿El compañero entiende que estos delitos se pueden transar con el Fiscal?

"Lic. Colberg: Yo entiendo que se puede transar cualquier delito. Si se transa un asesinato, un homicidio, un atentado a la vida, un acometimiento y agresión, entiendo que se puede transar un delito de adulteración de leche, siempre que esté autorizada por la Corte con la conformidad del Fiscal. En este caso, el Sr. Fiscal

Díaz Viera y el Fiscal interino, lo prueba este abogado, que respetuosamente se dirigió a V. H. y convino con el Sr. Fiscal propietario Hon. Enrique Díaz Viera y posteriormente con el compañero distinguido Hon. Vicente Palés Matos, en que si la Corte lo permitía, no se probaría la reincidencia en este caso, tomando en consideración que es muy dudoso probar que este Alejandro Acosta que aparece como acusado en esa reincidencia sea este mismo Alejandro Acosta Padilla que está respondiendo hoy de este caso ante la Corte, admitió el compañero de que se trata de una supuesta reincidencia de hace nueve años, aceptó siempre que el Hon. Juez de la Corte aceptaría que no se probara la reincidencia, tomando además en consideración la edad de este acusado, que tiene 57 años. Cuando este abogado transaba este asunto, el Fiscal Díaz Viera se dirigió al Hon. Juez de esta Corte, Hon. Francisco Navarro Ortiz, y el Hon. Juez de esta Corte Francisco Navarro Ortiz le dijo a este abogado que si el Fiscal aceptaba, él entendía no había inconveniente en que la reincidencia no se alegara. Si mal no recuerdo, V. H. me dijo a mí en su oficina que ésa era cuestión del Fiscal y que si el Fiscal no alegaba reincidencia, él no tenía inconveniente.

"Hon. Juez: Eso es cierto.

"Lic. Colberg: Y por eso esta parte, estimando que la transacción hecha con el Fiscal Díaz Viera y ratificada luego por el Fiscal interino Vicente Palés Matos y ratificada por el Hon. Juez de la Corte, Francisco Navarro Ortiz...

"Hon. Juez: No, eso no es así. La Corte le dijo al compañero que si el Fiscal no alegaba reincidencia, no tenía inconveniente ni tiene interés en que no se alegara.

"Lic. Colberg: Los motivos son esos. Yo digo bien claro que la transacción fué a base de no traer prueba de reincidencia o no alegarla y como la reincidencia viene en un proyecto de acusación donde se alega el Fiscal tiene que probarla. Ahora, que él aceptó transar no probándola y que es un abuso de discreción de la Corte tratar de introducir prueba de reincidencia, cuando el Fiscal ya se ha allanado a no probarla.

"Hon. Juez: Es hora ya de que en esta Corte se acabe la práctica de transar los casos fuera de estrados. El juez que preside esta Corte se propone acabar con esa práctica que lesiona los derechos de El Pueblo de Puerto Rico. La Corte no puede consentir tampoco que un caso después de comenzado se posponga para que el acusado prepare su prueba. Venga la prueba del demandado.

"Lic. Colberg: Nosotros sometemos el caso y anotamos una excepción a las palabras del Hon. Juez de la Corte."

El fiscal con su presencia y su silencio admitió haber tomado parte en el alegado convenio para no probar la reincidencia del acusado.

La práctica descrita en el diálogo arriba transcrito merece nuestra más enfática censura y reprobación. Es deber del fiscal presentar en evidencia toda la prueba de que pueda valerse legalmente para establecer la culpabilidad de las personas contra las cuales ha formulado una acusación. Faltaría abiertamente a ese deber, si teniendo evidencia suficiente de que un homicidio había sido realizado con malicia y deliberación, conviniese con el abogado defensor en suprimir esa prueba en el acto del juicio, para que el acusado no pudiese ser convicto de asesinato, de acuerdo con la acusación, y lo fuese solamente de homicidio. Si se admitiera que el fiscal está facultado para suprimir parte de su prueba, tendríamos que admitir que lo está también para suprimirla toda y para condonar cualquier delito mediante tales supresiones. Los convenios de esa naturaleza son contrarios al interés público y como tales completamente nulos. *El Pueblo v. Collazo*, 51 D.P.R. 450.

*Debe confirmarse la sentencia recurrida.*