EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* TOMÁS COLLAZO VERDEJO, acusado y apelante.

Núm. 6338.—*Sometido:* Abril 14, 1937. *Resuelto:* Abril 30, 1937.

*E. H. F. Dottin,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo; apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Carmen Rodríguez Acevedo presentó en la Corte Municipal de San Juan, Sección Segunda, tres denuncias contra Tomás Collazo Verdejo, por infracción a la Ley Dental y pidió luego el sobreseimiento de las causas iniciadas archivando en cada una un escrito que dice:

"Que con posterioridad a la radicación de su denuncia ha resuelto desistir de la continuación de este caso por los motivos de carecer de interés en el mismo."

A cada una de las mociones proveyó la indicada Corte Municipal de San Juan, Sección Segunda, el 5 de agosto de 1935, como sigue:

"Vista la moción que antecede y los méritos de la misma, la Corte ordena el archivo y sobreseimiento del caso, previo pago de las costas."

Así las cosas, el 11 de diciembre del propio año 1935, los detectives de la policía insular Arturo Bernard y Marcelino Santiago, presentaron en la Corte Municipal de San Juan, Sección Primera, el primero una y el segundo dos, en junto tres denuncias contra Tomás Collazo Verdejo, imputándole las mismas tres infracciones a la Ley Dental que le había imputado Carmen Rodríguez Acevedo.

A los efectos de fijar la naturaleza de las infracciones de que se trata transcribiremos de la primera de las denuncias lo que sigue:

"Que el 1 de abril de 1935 .... en Santurce, San Juan, .... el referido acusado Tomás Collazo Verdejo ... voluntaria, ilegal y maliciosamente y profesando ejercer la Cirugía Dental, examinó la boca de Carmen Rodríguez Acevedo con el propósito de hacerle una dentadura artificial—puente—para lo cual le extrajo dos dientes de la encía superior por precio; todo lo cual lo hizo sin estar autorizado para ejercer la profesión de dentista en Puerto Rico."

Los hechos que se imputan en la segunda y tercera denuncia consisten en la extracción de tres muelas y un diente y de tres muelas y se cometieron el 28 y el 21 de marzo de 1935, respectivamente.

En los tres procesos así iniciados en la Corte Municipal de San Juan, Sección Primera, compareció el acusado y formuló tres peticiones de archivo de la causa. Son iguales. Bastará por tanto transcribir lo substancial de una de ellas, a saber:

"Que por los mismos hechos que motivaron la presentación de esta denuncia y ocurridos en 28 de marzo de 1935, el aquí acusado fué denunciado por el mismo delito ante la Corte Municipal de San Juan, Sección Segunda y la causa resuelta bajo el número 43641, en 3 de agosto de 1935, de acuerdo con lo dispuesto en el artículo 446 del Código de Enjuiciamiento Criminal, el cual expresamente prohibe la instrucción de otro proceso por el mismo delito."

No accedió la corte. Condenó al acusado y éste apeló para ante la Corte de Distrito de San Juan. Por acuerdo de las partes aprobado por la corte los tres casos fueron llamados para verse conjuntamente el 10 de marzo de 1936. Acto seguido la defensa dijo: "Hay tres mociones 'to quash'." Y la corte resolvió: "Aun aceptando como cierta la alegación que se hace, el caso es de tal naturaleza, que no puede ser transigido y sería nula la orden de la corte que archive el caso, porque éste no es un caso que puede ser transigido. Tiene que ser un caso que sea susceptible de indemnización. En este caso se trata de una ley de orden público que impide el ejercicio de la profesión dental y el hecho de que el acusado le pague a quien se dejó prestar los servicios no lo releva de la infracción de la ley. Sería lo mismo que una persona que no está autorizada a ejercer la medicina, preste los servicios y después al ser denunciado pudiera venir a declarar el paciente que se le pagó. Con el solo hecho de ponerse de acuerdo con el cliente y decir que recibió el pago, estaría a salvo de la infracción. La corte aceptando aun como ciertos los hechos que se alegan denega-

ría la moción por entender que no es aplicable el artículo
ése al caso que nos ocupa.''

Se practicó entonces la prueba y de acuerdo con el resultado de la misma la corte dictó sentencia condenando al acusado en cada causa a pagar cincuenta dólares de multa o a sufrir un día de cárcel por cada dólar que deje de satisfacer.

No conforme Tomás Collazo Verdejo, apeló para ante este tribunal. Señala un solo error, como sigue:

''El acusado estima que la Corte sentenciadora cometió error al no ordenar el sobreseimiento y archivo de los casos por lós fundamentos establecidos en los artículos 446 y 169 del vigente Código de Enjuiciamiento Criminal.''

La ley reguladora de la materia en Puerto Rico está contenida en los artículos 445, 446 y 447 del Código de Enjuiciamiento Criminal (Ed. 1935) que prescriben:

''Artículo 445.—Cuando sea detenida una persona para responder a una acusación de *misdemeanor* (delito menos grave), y el individuo perjudicado por el hecho que constituye el delito tenga el recurso de indemnizarse del daño por medio de una acción civil, el asunto puede transigirse en la forma que dispone el artículo siguiente, excepto cuando el delito sea cometido:

''1. Por un empleado judicial o contra él, mientras esté en el ejercicio de las funciones de su cargo;

''2. Tumultuosamente;

''3. Con la intención de cometer un *felony* (delito muy grave).

''Artículo 446.—Si la parte perjudicada comparece ante el tribunal al que hayan de ser remitidas las declaraciones en cualquier momento antes de la celebración del juicio, y reconoce plenamente que ha recibido reparación por el daño causádole, el tribunal puede decretar, discrecionalmente y previo pago de las costas devengadas, que se suspendan todos los procedimientos en persecución del delincuente, y que éste quede exonerado de la culpa; pero en tal caso los fundamentos que tenga el tribunal para dictar el auto deben exponerse en éste, e insertarse en el acta del tribunal. Dicho auto imposibilita la instrucción de otro proceso por el mismo delito.

''Artículo 447.—Ningún delito público puede transigirse, como tampoco suspenderse ningún procedimiento o proceso, para el castigo del mismo, en virtud de una transacción, sino del modo establecido en este capítulo.''

Examinadas las mociones de Carmen Rodríguez Acevedo a la Corte Municipal de San Juan, Sección Segunda, y las resoluciones de dicha corte decretando el archivo y sobreseimiento, se observa en seguida que no se ajustan a las exigencias de la ley. Lo que manifestó la denunciante fué que desistía por carecer de interés, no que reconocía plenamente que había recibido reparación por el daño causádole. Y los fundamentos que tuvo la corte no se exponen en su resolución.

■■ Pasando sin embargo por alto tales deficiencias y aceptando que se hubiera cumplido estrictamente con la ley, creemos que dada la naturaleza del delito imputado al acusado tuvo razón la corte de distrito al declarar sin lugar las mociones "to quash" que se le presentaron.

Los artículos de nuestro Código de Enjuiciamiento Criminal que dejamos transcritos son iguales a las secciones 1377, 1378 y 1379 del Código Penal de California. Anotando la primera de ellas dice Pomeroy:

"De acuerdo con la antigua ley común cuando una persona que ha sido objeto de un robo no solamente conocía al ladrón sino que también recibía de éste los bienes robados, o su valor, con el entendido de que no lo procesaría, se le consideraba como un cómplice. 4 Blackstone's Commentaries, 133. Y cuando se cometía cualquier otro delito y una persona, sin permiso de la corte, hacía una transacción, o recibía dinero o le prometía al acusado que no lo procesaría, su actuación era punible. 4 Blackstone's Commentaries, 136. La Ley permite que se transija cualquier delito que, aunque sirva de objeto a una acusación criminal, la parte perjudicada puede ser indemnizada en acción de daños y perjuicios; mas si el delito es de naturaleza pública, no puede hacerse un convenio válido que tenga por causa la ocultación del proceso. Tal convenio tampoco puede convalidarse por la corte al consentir que se transija el proceso. *Keir* v. *Leeman*, 6 Q. R. 308; 2 Bennett & Heard's Leading Criminal Cases, 216." Pomeroy, "Penal Code", p. 508.

Corpus Juris en su tratado sobre "Criminal Law" que abarca todo el volumen diez y seis y una buena parte del diez y siete de la obra, al referirse a los motivos por virtud de los cuales las cortes pueden conceder propiamente un

"'nolle prosequi'', señala como uno de ellos el caso en que un "misdemeanor" ha sido transigido de acuerdo con alguna ley que autorice tales transacciones.   16 C. J. 435.

: Entre los casos que cita para sostener el texto está el de *State* v. *Hunter*, 14 La. Ann. 71.   En dicho caso la Corte Suprema de Louisiana interpretando un precepto legal vigente en dicho estado que disponía "que en todos los casos de acometimiento y agresión y de delitos menos graves, cuando las partes transigen y se retira la acusación no debe proseguirse la causa, ... siendo legal que el Procurador General o el Fiscal del Distrito registren un 'nolle prosequi' '', resolvió que no obstante haber llegado las partes a una transacción, el fiscal no venía obligado a desistir pudiendo la causa continuar y resolverse de acuerdo con los hechos y la ley como si la transacción no hubiera existido.   En el curso de la opinión, se dijo:

"Ahora bien, si estuviera dentro de la facultad del ofensor transigir con aquéllos que ha perjudicado, contra la voluntad de las personas que tienen a su cargo la ejecución de la ley penal, estos mismos fines serían vulnerados, pues en proporción a la gravedad del delito, deberán ser los esfuerzos ejercidos para efectuar una transacción y para dejar sin sanción las leyes infringidas.

"Así pues, al infractor que está llamado a responder civilmente por los daños causados al igual que de la pena impuesta al delito cometido, se le permitiría eludir el castigo respondiendo tan sólo de la indemnización civil.

"Por otra parte todos los delitos menos graves y los acometimientos perpetrados por los osados y poco escrupulosos contra las personas afables, contra los débiles o tímidos, permanecerían sin castigo, puesto que tales ofensores no tendrían dificultad en lograr mediante intimidación o lisonja, prueba de una transacción.   Por tanto, parecería que la facultad para transigir delitos menos graves no debería dejarse exclusivamente al perjudicado.   Así pues, si examinamos el artículo en relación con el objeto del derecho penal, no tendremos dificultad en llegar a la conclusión de que nunca fué la intención del estado desprenderse de su dominio de procesar por los acometimientos y agresiones y por los delitos menos graves.   Mas ocurre a veces que se cometen delitos bajo circunstancias tales que no demuestran una verdadera intención de violar la ley y que a veces

se realizan acometimientos bajo un erróneo entendido de los hechos y bajo una cólera momentánea, y sin causar mucho daño a la parte perjudicada. En tales casos, cuando el perjudicado voluntariamente manifiesta y declara que se encuentra satisfecho y que desea que se abandone la acusación, la justicia pública nada gana con la continuación del proceso, y la ley permite al fiscal que entre un 'nolle prosequi'. Por otra parte, la presentación de una transacción escrita de un delito de acometimiento y agresión por el fanfarrón y terror del vecindario, podría agravar el daño público y servir de justa causa para una prosecución más rigurosa, a fin de que haya vindicación adecuada de las leyes.

"No abrigamos duda alguna de que el estatuto en armonía con sus propios términos tan sólo es permisivo, y no vacilamos en confirmar la sentencia de la corte inferior."

La jurisprudencia así establecida fué confirmada luego en el caso de *State* v. *Frazier et al.,* 52 La. Ann. 1305.

El delito imputado en estos casos concretos sometidos a nuestra consideración y resolución es de tal naturaleza que sin esfuerzo alguno se concluye que su investigación y castigo no puede hacerse depender de la voluntad de la persona en relación con la cual se cometa.

Un dentista es un cirujano dental. El ejercicio de la cirugía dental ha adquirido un notable desarrollo en los últimos tiempos. Se trata de una verdadera ciencia íntimamente relacionada con la mecánica, la medicina y la cirugía. El título que autoriza la práctica dental se obtiene a través de años de estudio y práctica en colegios y universidades. Se otorga generalmente bajo la denominación de doctor. De ahí que haya habido necesidad de regular por medio de leyes especiales el ejercicio de la profesión.

La Ley núm. 75 de 1925, leyes de 1925, p. 551, enmendada por la 31 de 1929, leyes de 1929, p. 199, está dedicada enteramente a regular la práctica de la cirugía dental en Puerto Rico. La sección 13 de dicha ley, como enmendada, prescribe:

"Sección 13.—Toda persona que no estando legalmente autorizada para dedicarse al ejercicio de la cirugía dental, la ejerciere, o que viole las disposiciones de esta Ley, incurrirá en un delito menos

grave (*misdemeanor*), y convicta que fuere será castigada con multa, mínima de cincuenta (50) dólares y máxima de doscientos cincuenta, (250) dólares o cárcel por un término máximo de dos años, o ambas penas, a discreción del tribunal; en casos de reincidencia la pena será de treinta días de cárcel como mínimo y de dos años de cárcel como máximo; y todos los instrumentos, implementos, medicinas y drogas en posesión de cualquier transgresor de esta sección serán confiscados por la autoridad competente y puestos a disposición del tribunal; y convicto que fuere dicho transgresor, los instrumentos, implementos, drogas y medicinas así confiscados serán vendidos por el márshal en pública subasta, mediante orden de la corte competente, a cualquiera persona o firma profesional autorizada para ejercer la cirugía dental en Puerto Rico, conforme a las disposiciones de esta Ley, o a cualquier casa de comercio, firma o corporación que regularmente se dedique a comerciar con tales instrumentos, implementos, drogas y medicinas.''

No es la persona en relación con la cual se practica ilegalmente la cirugía dental la verdaderamente perjudicada o por lo menos la única perjudicada que pueda darse por satisfecha porque se le devuelva el dinero que se le cobrara. Esa persona puede que no haya sufrido perjuicio alguno. Puede que quizá lo que haya recibido sea un beneficio. La verdadera infracción se comete contra la sociedad en general que por medio de sus autoridades constituídas decidió regular el ejercicio de la profesión. Y es la violación de esas regulaciones que se creyeron convenientes y necesarias para el ordenado funcionamiento de esa actividad social, lo que se castiga. Para imponer el castigo no se investiga si el acto realizado en la persona determinada que en la denuncia se menciona lo fué o no en debida forma. Pudo haberse llevado a efecto del modo mejor, científicamente, y eso no obstante si lo fué por alguien que no estaba autorizado, la infracción se habría siempre cometido. De ahí la predominante naturaleza pública del delito que hace inaplicables en cuanto al mismo los preceptos del Código de Enjuiciamiento Criminal sobre convenio de las partes sobre ''misdemeanor''.

Además la propia ley dispone que todos los instrumentos, implementos, medicinas y drogas en posesión de cualquier

transgresor serán confiscados y convicto que fuere dicho transgresor, serán vendidos por el márshal en la forma y a la persona que la propia ley autoriza. ¿Y cómo sería posible dar cumplimiento por el Estado a esa parte de la ley si se dejara la ejecución de la misma a la voluntad de la persona particular en relación con la cual se practique la cirugía dental ilegalmente?

█ Se hace también referencia en el señalamiento de error al artículo 169 del Código de Enjuiciamiento Criminal que dispone:

"Artículo 169.—Si el acusado hubiere sido convicto o absuelto de una acusación, o estado en peligro alguna vez por la misma, tal convicción, absolución o peligro constituirá excepción perentoria a la nueva acusación por el delito imputado en la anterior, o por tentativa de cometerlo, o por cualquier delito necesariamente comprendido en la misma de que hubiera podido ser convicto en virtud de dicha acusación anterior."

Ninguna de las situaciones que tuvo en mente el legislador surge en este caso. La actuación de la Corte Municipal de San Juan, Sección Segunda, siendo como fué completamente nula, no puede invocarse. Es como si no existiera.

En el caso de *State* v. *Bates,* 61 Pac. 905, 83, A.S.R. 768, 772, la Corte Suprema de Utah se expreso así:

"Una sentencia nula no es realmente una sentencia. Deja a las partes litigantes en la misma posición en que estaban antes del juicio. Las deja exactamente en la misma posición que si no se hubiera celebrado un juicio. Tal sentencia no faculta a nadie para hacerla cumplir.

" 'Una sentencia nula', dice el Sr. Black, 'no es en realidad una sentencia. Es una mera nulidad. No está acompañada de ninguna de las consecuencias de una adjudicación válida ni tiene derecho al respeto que una sentencia se merece. No puede afectar, menoscabar ni crear derechos. En lo que se refiere a la persona contra quien se supone haberse dictado, no le obliga en modo alguno, no tiene el efecto de un gravamen sobre su propiedad ni levanta un impedimento en su contra. En lo que concierne a la persona a cuyo favor se supone haberse dictado, ella no le coloca en mejor posición de la que ocupaba antes; no le concede ningún nuevo derecho y la

**460**

tentativa de hacerla cumplir le colocará en una situación peligrosa. En lo que a terceros se refiere, no puede ser una fuente de título ni un impedimento en la exigibilidad de sus derechos. No es necesario dar paso alguno para revocarla, dejarla sin efecto o anularla. Mas cuando se ofrece contra una persona, ésta puede atacarla y demostrar su ineficacia. No está sostenida por presunción alguna y puede ser atacada en cualquier procedimiento, directo o colateral.' Black on Judgments, sección 170. En el presente caso todos los procedimientos de la corte sentenciadora, posteriores al archivo de la alegación del acusado, fueron enteramente nulos porque la corte, en ausencia de un jurado legal, no tenía jurisdicción para juzgar la causa, y por ende su sentencia y fallo fueron meras nulidades, y la confirmación de la sentencia por la corte suprema no podía convalidarlos. Por tanto, esa sentencia podría ser considerada y tratada · como una nulidad cuandoquiera, doquiera y por quienquiera fuese utilizada o usada como una sentencia válida.''

No habiéndose cometido el error alegado, *deben declararse sin lugar los recursos y confirmarse las sentencias recurridas*.