EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE PONCE, demandado; CARLOS E. COLÓN, interventor.

Número 1944.

*Sometido:* 12 de noviembre de 1952. *Resuelto:* 5 de mayo de 1953.

840

*Hon. Secretario de Justicia José Trías Monge (Víctor Gutiérrez Franqui, Ex-Procurador General y Frank Vizcarrondo Vivas, Ex-Fiscal Auxiliar del Tribunal Supremo, en la petición y en el alegato) y J. Rivera Barreras, Fiscal del Tribunal Supremo y R. Ydrach Yordán, Fiscal Auxiliar, abogados del peticionario; Rafael Rivera Zayas, Inés Acevedo de Campos, Lorenzo Lagarde Garcés, Rafael Hernández Matos y Carlos Todd, abogados del interventor, demandado en la causa principal.*

EL JUEZ ASOCIADO SEÑOR SIFRE emitió la opinión del tribunal.

En la madrugada del 18 de agosto de 1951, y en la calle Méndez Vigo, en la ciudad de Ponce, el interventor, Carlos E. Colón, hizo un disparo de revólver del que salió herido Joseph Frederick Owens. En esa fecha se inició la investigación del caso por el Fiscal Arturo Cintrón García, tomando declaración a varios testigos. Otros fueron interrogados el día 25 de dicho mes. En ninguna de esas ocasiones se tomó declaración al perjudicado.

. · En 16 de octubre de ese mismo año, el Fiscal William Morales Torres presentó denuncia contra el interventor en el extinto Tribunal Municipal de Puerto Rico, Sala Primera de Ponce, por un delito de acometimiento y agresión grave, imputándole que:

". . . ilegal, voluntaria y maliciosamente y con la intención criminal del inferir grave daño corporal en la persona de un ser humano, acometió y agredió a Joseph Frederick Owens con un arma de fuego, con la que le hizo un disparo ocasionándole una herida de bala en la parte baja del estómago.

"El agravante en este caso consiste en que la herida ocasionada es de carácter grave y fué causada por un arma de fuego, que es un instrumento mortífero."

En igual fecha radicó Owens una moción solicitando el archivo y sobreseimiento de dicha denuncia, a tenor con las disposiciones del artículo 446 del Código de Enjuiciamiento Criminal, por haber llegado a un arreglo amistoso con el acusado y haber sido indemnizado por éste de "todos los daños y perjuicios por él sufridos mediante el pago de suficiente consideración de dinero . . ." En ese mismo día, y con vista de la referida denuncia, de los testimonios prestados ante el Fiscal Arturo Cintrón García en el curso de la investigación por él practicada, de una declaración de Joseph Frederick Owens suscrita ante el Fiscal William Morales Torres en 15 de octubre de 1951, y de la moción solicitando el archivo y sobreseimiento del proceso, el mencionado tribunal dictó la siguiente resolución y orden:

. "El Tribunal vistos los autos del presente caso, la moción bajo juramento de la parte perjudicada interesando el archivo y sobreseimiento por transacción, así como la conformidad del Fiscal de Distrito de Ponce quien investigó y juró la denuncia en este caso y tomando en consideración las manifestaciones bajo juramento de la parte perjudicada en el sentido de que ha sido totalmente resarcida de todos los daños y perjuicios que le puedan haber causado, y de las que se desprenden circunstancias que mueven al Tribunal dentro de su discreción a creer que el acusado no cometió el delito que se le imputa con la intención

criminal de cometer un delito *felony,* y asimismo visto lo dispuesto en los Artículos 445, 446 y 447 del Código de Enjuiciamiento Criminal vigente, por la presente declara la moción de la parte perjudicada con lugar y en su consecuencia ordena el archivo y sobreseimiento del presente caso por transacción entre las partes, absolviendo como por la presente absuelve libremente al acusado de toda culpa en este caso, previo el pago de costas si las hubiere y por último ordena se cancele cualesquier fianza provisional que pudiera haber prestado." (¹)

Archivado y sobreseído el proceso por acometimiento y agresión grave, el Fiscal Especial General, Guillermo A. Gil, radicó acusación contra el interventor ante el antiguo Tribunal de Distrito de Puerto Rico, Sección de Ponce, imputándole en el segundo cargo de la misma un delito de ataque para cometer asesinato, perpetrado de la manera siguiente:

"El referido acusado, Carlos E. Colón, con anterioridad a la presentación de esta acusación, o sea allá, en o por el día 18 de agosto de 1951, en la Calle Méndez Vigo de Ponce, Puerto Rico,

(¹) Los artículos 445, 446, y 447 del Código de Enjuiciamiento Criminal, edición 1935, leen como sigue:

"Artículo 445.—Cuando sea detenida una persona para responder a una acusación de *misdemeanor* (delito menos grave), y el individuo perjudicado por el hecho que constituye el delito tenga el recurso de indemnizarse del daño por medio de una acción civil, el asunto puede transigirse en la forma que dispone el artículo siguiente, excepto cuando el delito sea cometido:

1. Por un empleado judicial o contra él, mientras esté en el ejercicio de las funciones de su cargo;

2. Tumultuosamente;

3. Con la intención de cometer un *felony* (delito muy grave).

"Artículo 446.—Si la parte perjudicada comparece ante el tribunal al que hayan de ser remitidas las declaraciones en cualquier momento antes de la celebración del juicio, y reconoce plenamente que ha recibido reparación por el daño causádole, el tribunal puede decretar, discrecionalmente y previo pago de las costas devengadas, que se suspendan todos los procedimientos en persecución del delincuente, y que éste quede exonerado de la culpa; pero en tal caso los fundamentos que tenga el tribunal para dictar el auto deben exponerse en éste, e insertarse en el acta del tribunal. Dicho auto imposibilita la instrucción de otro proceso por el mismo delito.

"Artículo 447.—Ningún delito público puede transigirse, como tampoco suspenderse ningún procedimiento o proceso, para el castigo del mismo, en virtud de una transacción, sino del modo establecido en este capítulo."

que forma parte del Distrito Judicial de Puerto Rico, Sección de Ponce, Puerto Rico, allí y entonces, demostrando tener el acusado un corazón pervertido y maligno, con malicia, premeditación y deliberación e intención de matar, atacó con un revólver al ser humano Joseph Frederick Owens, haciéndole un disparo e hiriéndole gravemente, con la intención allí y entonces de cometer asesinato en la persona del mencionado Joseph Frederick Owens."

Llamado el caso para la lectura de la acusación, el interventor formuló la alegación de exposición anterior, *former jeopardy*, y la de cosa juzgada, *res judicata*, solicitando por estos motivos el archivo y sobreseimiento del segundo cargo de dicha acusación. (²)

Sostuvo en síntesis que, habiendo sido exonerado en el proceso por acometimiento y agresión grave, El Pueblo de Puerto Rico estaba impedido de radicar acusación por el delito de ataque para cometer asesinato, toda vez que dicha acusación se basaba en los mismos hechos que habían dado lugar a dicho proceso, en el cual habían sido "adjudicados definitivamente". Se opuso el ministerio público por entender que tales alegaciones eran improcedentes por no haber estado

(²) La alegación de former jeopardy, y el estar impedido El Pueblo de procesarle por el delito de atentado a la vida, la basó el interventor en la Enmienda V de la Constitución de Estados Unidos, en el párrafo 3 de la sección 2 de la antigua Carta Orgánica de Puerto Rico, y en los artículos 6, 162 y 446 del Código de Enjuiciamiento Criminal. La Enmienda V, provee que nadie podrá ser sometido por el mismo delito dos veces a un juicio que pueda ocasionarle la pérdida de la vida o la integridad corporal. El párrafo 3 de la sección 2 de la antigua Carta Orgánica disponía que "ninguna persona será puesta dos veces en riesgo de ser castigada por el mismo delito". Los artículos 6 y 162 del Código de Enjuiciamiento Criminal, edición 1935, preceptúan lo siguiente:

"Artículo 6.—Ninguna persona podrá ser procesada por segunda vez por un delito público, después de haber sido ya condenada o absuelta por el mismo delito."

"Artículo 162.—Hay cuatro clases de alegaciones contra una acusación, a saber:

1. Confesión.
2. Negación.
3. Sentencia anterior condenatoria o absolutoria, por el mismo delito, que podrá alegarse con o sin la negación.
4. Haber estado una vez expuesto por el mismo delito.

"Artículo 446.—Véase el escolio (1) de esta opinión.

"expuesto" el acusado ante el Tribunal Municipal por la misma ofensa, y porque la resolución decretando el archivo de la denuncia por acometimiento y agresión grave era nula por haberse dictado sin jurisdicción, toda vez que el delito cometido por el interventor era el de ataque para cometer asesinato, que es un *felony*, y como tal, no transigible de acuerdo con los preceptos del artículo 445 del Código de Enjuiciamiento Criminal. El tribunal a quo desestimó estas contenciones, y dictó la resolución recurrida, ordenando el archivo y sobreseimiento del segundo cargo de la acusación. No conforme el peticionario con dicha resolución, instó el presente recurso en solicitud de que las revisáramos. En su oportunidad expedimos el auto.

El peticionario la impugna por entender que el tribunal erró (1) "al concluir que, en relación con el caso de autos, la prohibición que establece el artículo 446 del Código de Enjuiciamiento Criminal constituye un *'statutory jeopardy'* que impide (*estoppel*) al ministerio público formular nueva acusación por el delito de ataque para cometer asesinato", (2) "al concluir que, toda vez que el Pueblo estuvo representado por su Fiscal en la vista de la moción de transacción que motivó el archivo de la denuncia por acometimiento y agresión grave, el Tribunal de Distrito no debía entrar a investigar las circunstancias que rodearon dicho archivo para determinar si el Tribunal Municipal hizo buen uso de su discreción al darle curso a la moción de transacción presentada por la parte perjudicada".

Suscita el interventor ciertas cuestiones que debemos resolver antes de proceder a discutir los errores señalados.

■ Nos dice que no teníamos jurisdicción para expedir el auto de *certiorari*, porque la petición o solicitud no está jurada. No estamos de acuerdo. La falta de juramento es un defecto de forma que en manera alguna puede afectar nuestra jurisdicción. El defecto quedó remediado por el *return* radicado en este Tribunal. *Fernández* v. *Corte*, 71 D.P.R. 161.

■ Sostiene que la petición con la que se inició el recurso, "no aduce hechos constitutivos de causa de acción", porque no se desprende de la misma o de los autos, que el peticionario solicitara del tribunal a quo la reconsideración de la resolución impugnada. Tampoco tiene razón el interventor. Podemos expedir el auto de certiorari aunque no se haya solicitado la reconsideración de la resolución o sentencia que se desea revisar, si en algún momento el tribunal sentenciador ha tenido la oportunidad de considerar y resolver las cuestiones que se plantean ante nos en la solicitud. *Autoridad de Fuentes Fluviales* v. *Corte*, 65 D.P.R. 935. Esa oportunidad la tuvo el tribunal recurrido.

■ Sostiene también que el artículo 348 del Código de Enjuiciamiento Criminal(³) enumera los casos en que El Pueblo de Puerto Rico puede apelar de "un fallo absolutorio de un tribunal inferior, no estando el presente caso incluído en ninguno de sus apartados", y que no siendo apelable una resolución como la recurrida, tampoco puede ser revisada por certiorari, debiendo presumirse que no fué la intención legislativa autorizar la revisión por medio de dicho recurso. Añade que es de notarse que los apartados del citado artículo dan derecho de apelación contra resoluciones favorables al acusado, recaídas antes de haber sido expuesto en el tribunal a quo, no incluyendo ningún caso en el que el procesado, "haya sido necesariamente expuesto ante el tribunal inferior", como según el interventor, sucede en el de autos. Tam-

---

(³) El artículo 348 del Código de Enjuiciamiento Criminal, edición 1935, lee como sigue:

"Artículo 348.—El ministerio público puede establecer apelación:

1. De una providencia desestimando la acusación.

2. De una sentencia a favor del acusado en virtud de excepción perentoria puesta a la acusación.

3. De una providencia concediendo la celebración de un nuevo juicio.

4. De una providencia declarando el sobreseimiento provisional.

5. De una providencia dictada después de pronunciado el fallo que afecte los derechos sustanciales del ministerio público.

6. De una orden del tribunal al jurado mandando que éste pronuncie veredicto a favor del acusado.

bién arguye que si el Estado pudiera apelar u obtener la revisión de resoluciones absolutorias cuando el acusado ha sido expuesto, la apelación o revisión equivaldría a una nueva exposición, en violación de sus derechos constitucionales.

Es regla general en la mayoría de las jurisdicciones que, en ausencia de una ley que expresamente le confiera el derecho de apelación, el Estado no puede obtener la revisión de una resolución dictada en un proceso criminal. En esta doctrina se basa el interventor al sostener que no podemos revisar por certiorari, a solicitud de El Pueblo, una resolución que es inapelable.

En vista de las disposiciones del artículo 670 del Código de Enjuiciamiento Civil, ([4]) definiendo y autorizando el auto de certiorari, y considerando el alcance y dilatada esfera de acción reconocídale por nuestras decisiones, no procede que adoptemos la doctrina que invoca el interventor. Si decidiéramos lo contrario, estaríamos limitando y restringiendo injustificadamente la función y uso de ese remedio, y renunciando al poder que, en el ejercicio de nuestra discreción, ([5]) hemos tenido siempre para revisar en esa forma resoluciones y providencias originadas en procesos criminales, tanto a solicitud del acusado, como a instancias de El Pueblo, generalmente si contra ellas no puede interponerse recurso de ape-

---

([4]) El artículo 670 del Código de Enjuiciamiento Civil, edición de 1933, define el certiorari así:

"El auto de certiorari es un auto expedido por un tribunal superior a otro inferior, por el cual se exige del último la remisión al primero, de una copia certificada de las diligencias pendientes en el tribunal inferior o los autos de alguna causa ya terminada, en aquellos casos en que el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley, y con objeto de terminar los procedimientos cuando el tribunal inferior rehusare hacerlo fundado en bases erróneas."

([5]) Este poder lo teníamos antes de la aprobación de la "Ley De la Judicatura del Estado Libre Asociado de Puerto Rico", aprobada en 24 de julio de 1952, la Sección 14 de la cual preceptúa que "Cualquier sentencia o resolución del Tribunal Superior puede ser revisada por certiorari a discreción del Tribunal Supremo". Por esa razón resulta innecesario discutir el alcance de tales preceptos.

lación, y a nuestro juicio existen circunstancias que justifiquen la revisión. (5a)

En *Pueblo* v. *Corte*, 40 D.P.R. 861, aunque nos negamos a librar el auto de certiorari solicitado por El Pueblo de Puerto Rico, entre otras razones, porque la actuación que se nos pedía revisar equivalía en efecto a una absolución, no existiendo por tanto, medio alguno para someter a los acusados a otro juicio por el mismo delito que había dado lugar al proceso en el que se originó la actuación que fuera objeto del recurso, manifestamos que "Si bien esta solicitud ha sido presentada en una causa criminal, los principios generales del certiorari son aplicables a ella". En *Pueblo* v. *Corte*, 44 D.P.R. 703, se presentó por El Pueblo una petición de certiorari para revisar un incidente originado en una causa criminal. El auto fué expedido y anulado más tarde por motivos que no es necesario discutir. No obstante, en nuestra opinión nos expresamos así: "Sin embargo, entrelazada como está la cuestión de forma con la de fondo, podría esta Corte, *especialmente no existiendo como no existe recurso de apelación,* no sólo ordenar a la corte de distrito que registrara su decisión expresamente, sí que además lo hiciera ajustándose a los principios que en esta opinión se establecen, reservando al acusado, desde luego, las defensas de que pudiera estar asistido". (Bastardillas nuestras.) En *Pueblo* v. *Corte*, 60 D.P.R. 222, anulamos en recurso de certiorari, iniciado por El Pueblo de Puerto Rico, órdenes dictadas a favor del acusado en causa criminal. (6)

La doctrina de que podemos revisar por certiorari, a solicitud de El Pueblo, aun cuando no se le hubiera conferido

---

(5a) El artículo 671 del Código de Enjuiciamiento Civil dispone que el auto de certiorari podrá expedirse prescindiendo del hecho de que la resolución o sentencia de que se trate sea revisable mediante apelación.

(6) De nuestra opinión en el caso de *Pueblo* v. *Corte*, supra, transcribimos lo siguiente:

"El auto de certiorari, por ser un remedio extraordinario, no debe expedirse generalmente cuando exista un remedio adecuado, rápido y eficaz en el curso ordinario de la ley. Siendo apelable la resolución en controversia, artículo 348 del Código de Enjuiciamiento Criminal y *Pueblo* v.

derecho de apelación contra la resolución objeto del recurso, (doctrina que según hemos expuesto, ha sido aplicada y seguida por este Tribunal en el pasado), está sostenida por precedentes de otras jurisdicciones. *State* v. *Coleman*, 190 Atl. 791 (R.I.) ; *State* v. *Fleckinger*, 93 So. 115 (La.) ; *State* v. *Dobson*, 36 S.W. 238 (Mo.) ; *State* v. *Then*, 177 Atl. 87 (N.J.). Y somos de opinión que no existe razón para que la repudiemos. Ha sido nuestra norma el usar de nuestros poderes para dar protección a todas las partes. Altamente injusto sería negársela al estado cuando lo requiera para cumplir con su misión de hacer que se observen las leyes penales y sólo pueda obtenerla a través del certiorari, y tal protección pueda extendérsele por ese medio, sin menoscabar o destruir derechos sustanciales del procesado, condición ésta a la que necesariamente está supeditada la revisión por vía de dicho recurso a instancias de El Pueblo, de incidentes o actuaciones originadas en procesos de naturaleza penal.

■ Nos toca resolver ahora, si en el presente caso procede conceder al peticionario la protección y el remedio que solicita. A ello pasamos a dar nuestra atención; y en la discusión de este aspecto del recurso, que envuelve el estudio de los errores señalados, haremos referencia a la contención del interventor de que es improcedente que revisemos la resolución recurrida porque ello violaría su derecho constitucional a no ser expuesto dos veces por el mismo delito.

Las razones que tuvo el tribunal a quo para ordenar el archivo y sobreseimiento del segundo cargo de la acusación por el delito de ataque para cometer asesinato, constan en los siguientes párrafos de la resolución recurrida:

*Fajardo*, 21 D.P.R. 451, y siendo el recurso de apelación tan rápido y eficaz a los efectos de este caso como lo es el de certiorari, por ese solo motivo podríamos anular el auto expedido. Pero habida cuenta de que se trata de una cuestión de práctica que se suscita por primera vez en esta jurisdicción y que debe resolverse a la mayor brevedad posible a fin de que nuestra decisión sirva de norma para casos futuros, nos sentimos justificados en dictar de una vez la resolución que proceda en lugar de posponerla hasta tanto el caso vuelva a este Tribunal por la vía apelativa."

"No creemos sea nuestro deber penetrar en el ámbito de la discreción judicial y resolver si el juez hizo buen uso de su discreción. El Estado estuvo representado en ese proceso. A través de su representante legal, calificó el delito y escogió la jurisdicción para ventilar los hechos. Se resuelven esos hechos con la anuencia del Estado. No se nos ha probado que el Estado, al así actuar por conducto de su representante legal, fué movido por fraude, connivencia o colusión. Terminada esta transacción, ahora no puede quejarse el soberano de haber seleccionado erróneamente el procedimiento que debió seguir (7 Cal. Jur. 960). Máxime cuando la transacción no se dejó a la sola voluntad del perjudicado sino que, además, El Pueblo fué oído y participó en la misma, dando su conformidad.

"Ya hemos expuesto que la transacción que se llevó a efecto estaba predicada en las disposiciones del artículo 445 del Código de Enjuiciamiento Criminal."

Después de transcribir el artículo 446, dándole énfasis a la disposición de que un auto dictado de acuerdo con sus preceptos, exonerando de culpa al delincuente, "imposibilita la instrucción de otro proceso por el mismo delito", nos dice:

"Interpretando este artículo, tenemos que concluir indefectiblemente que el mismo establece un 'statutory jeopardy' que impide la instrucción de otro proceso contra el acusado por la misma ofensa, independientemente de la aplicación o no aplicación de la doctrina general de jeopardy. Estamos contestes en la doctrina establecida en los casos de El Pueblo v. Collazo, 51 D.P.R. 451 y El Pueblo v. Galarza, 60 D.P.R. 208, ya que los delitos cometidos en dichos casos (Hurto y Ley Dental) no eran transables por ser de naturaleza pública. Empero, tal doctrina no es de aplicación a los hechos de este caso por ser el delito uno de Acometimiento y Agresión Grave, calificado así por El Pueblo y sostenido por la Corte, un delito contra la persona, que no cae dentro de las excepciones del artículo 445 (supra).

Posiblemente, la corte a quo y el Fiscal Morales le dieron crédito a la declaración del perjudicado para calificar el delito como de Acometimiento y Agresión Grave. Una de las testigos (Lydia María Rivera) declara que sus otras compañeras, también testigos en este caso, Gloria Zayas Meléndez y Francis Marrero, estaban con ella dentro de la casa cuando escucharon las tres un disparo procedente del sitio de los hechos que dan mar-

gen al cargo segundo de la acusación. Creemos, sin embargo, que no es nuestra misión consignar aquí nuestras propias conclusiones y deducciones sobre la apreciación de la evidencia en el Tribunal Municipal. Las declaraciones juradas que forman parte de este expediente, fueron cernidas por el ministerio fiscal y por el magistrado municipal, y en ausencia de prueba tendente a demostrar que esta transacción se logró a través de fraude, connivencia o colusión o que el tribunal actuó sin jurisdicción, forzosamente tenemos que concluir que El Pueblo de Puerto Rico está ahora impedido (*estoppel*) de procesar al acusado por los hechos alegados en dicho segundo cargo, ya que los mismos fueron adjudicados definitivamente en el Tribunal Municipal, Sección de Ponce, en el caso criminal núm. 6453, El Pueblo de Puerto Rico v. Carlos E. Colón, por Acometimiento y Agresión Grave.

"Sostiene El Pueblo que el procedimiento ante el Tribunal Municipal de Puerto Rico, Sección de Ponce, es nulo '*ab-initio*', toda vez que la corte actuó sin jurisdicción, en violación al propio artículo 445 del Código de Enjuiciamiento Criminal, por cuanto los hechos que se denuncian ante ese tribunal como constitutivos de un delito de Acometimiento y Agresión Grave (*misdemeanor*) no constituían tal delito y sí uno *felony* de Ataque para Cometer Asesinato. Se pretende, sin lugar a dudas, atacar la resolución de la Corte Municipal colateralmente. La jurisdicción engendra el poder de ventilar y resolver un asunto, al igual que el poder de decidir la cuestión en forma errónea o correcta. La jurisdicción no la confiere el fallo que ha podido dar el tribunal, sino la autoridad que éste tiene para resolver la cuestión que se plantea.

. . . . . . . . . .

"Por los fundamentos expuestos, se declara con lugar la alegación de '*Former Jeopardy*' y '*Res Judicata*', interpuesta por el acusado y, en su consecuencia, se ordena el archivo y sobreseimiento del segundo cargo de la acusación que nos ocupa, como asunto definitivamente terminado."

Se habrá notado que dicho tribunal creyó que no era su deber "penetrar en el ámbito de la discreción judicial y resolver si el Juez hizo buen uso" de ella, y que por un lado entiende que no es misión suya expresar sus "propias conclusiones y deducciones sobre la apreciación de la prueba en el Tribunal Municipal", y por el otro decide que éste tenía

"jurisdicción" para actuar como lo hizo. Es evidente que, sin estudiar las declaraciones prestadas en la investigación fiscal con el propósito de formular sus propias e independientes conclusiones en cuanto a si el Tribunal Municipal tenía poder para conocer del proceso y ordenar su archivo por transacción, la corte a quo resolvió que lo tenía, basando dicha conclusión en los siguientes factores, (1) El Tribunal Municipal tenía discreción para aprobar la transacción porque el delito era de acometimiento y agresión grave, *misdemeanor*; (2) El Pueblo lo calificó así, por conducto del fiscal, su representante legal, escogiendo la "jurisdicción" para ventilarlo "habiéndose resuelto los hechos con la anuencia del Estado", por lo cual, terminada la transacción y no habiéndose demostrado que aquél fuera "movido por fraude, connivencia o colusión" no puede quejarse de haber seleccionado erróneamente el procedimiento que debió seguir, "máxime cuando la transacción no se dejó a la sola voluntad del perjudicado sino que además, El Pueblo fué oído y participó en la misma dando su consentimiento", (3) Las declaraciones prestadas ante el ministerio público fueron examinadas por el fiscal y por el magistrado municipal; (4) Posiblemente el Tribunal Municipal y el Fiscal Morales le dieron crédito a la declaración del perjudicado para calificar el delito como de acometimiento y agresión grave".

Se equivocó el tribunal recurrido al enfocar el problema de ese modo. Enfrentado con la alegación del interventor de que la resolución y orden archivando la denuncia por acometimiento y agresión grave imposibilita el proceso por ataque para cometer asesinato, y con la alegación de cosa juzgada por razón de los procedimientos habidos ante el Tribunal Municipal; y considerando que el ministerio público sostuvo que dichos procedimientos estaban viciados de nulidad por carecer el citado tribunal de poder para aprobar la transacción, la corte a quo estaba obligada a examinarlos para expresar su juicio a través de sus propias conclusiones en cuanto a la existencia o inexistencia de ese poder bajo las disposi-

ciones de los artículos 445 y 446 del Código de Enjuiciamiento Criminal, problema éste, el de mayor importancia para el estudio y resolución de las cuestiones suscitadas por el interventor y por el ministerio público.

En nuestra opinión, erró la corte a quo al partir de la premisa de que el Tribunal Municipal había actuado dentro del ámbito de sus poderes al dictar la resolución y orden de archivo, llegando equivocadamente a la conclusión de que por razón de los factores señalados en su resolución, procedía la desestimación del segundo cargo de la acusación.

El artículo 445 del Código de Enjuiciamiento Criminal autoriza, como se habrá visto, que "cuando sea detenida una persona para responder a una acusación de *misdemeanor* (delito menos grave), y el individuo perjudicado por el hecho que constituye el delito tenga el recurso de indemnizarse del daño por medio de una acción civil, el asunto puede transigirse", según dispone el artículo 446, excepto cuando el delito sea cometido; (1) por un empleado judicial o contra él, mientras está en el ejercicio de las funciones de su cargo; (2) tumultuosamente; (3) con la intención de cometer un *felony* (delito muy grave). El artículo 446 establece la forma de llegar a la transacción, concediendo discreción al tribunal para aprobar y exonerar de culpa al acusado, y dispone que el auto dictado a tal efecto "imposibilita la instrucción de otro proceso por el mismo delito". De acuerdo con los preceptos del artículo 447, "Ningún delito público puede transigirse . . . sino del modo establecido" por las disposiciones que le preceden.

Estos artículos fueron aprobados para permitir que se condonen ciertos delitos menos graves, que por su naturaleza no afectan el interés y bienestar públicos. De ahí que, a pesar de referirse en términos generales a *misdemeanors*, hayamos resuelto que no todos los que así se caracterizan, pueden ser transigidos. Por ejemplo, son de tan predominante naturaleza pública los delitos cometidos contra la Ley Dental, que a ellos no son aplicables las disposiciones de dichos ar-

tículos. *Pueblo* v. *Collazo*, supra. Y en *Pueblo* v. *Galarza*, supra, resolvimos que aun cuando el hurto de menor cuantía es un delito menos grave, no está incluído dentro de las disposiciones de los artículos 445 y 446 del Código de Enjuiciamiento Criminal", por ser uno que envuelve depravación moral. *Es obvio, que un felony no puede condonarse o transigirse, a tenor con los preceptos que comentamos.*

De los testimonios prestados en el curso de la investigación fiscal, inclusive el de Owens, únicos que tuvo el Fiscal Morales Torres cuando presentó la denuncia por acometimiento y agresión grave, y únicos que pudo considerar el Tribunal Municipal al decretar su archivo, se desprende que existe causa suficiente para procesar al interventor por el delito de ataque para cometer asesinato, ya que de los mismos surgen circunstancias que prima facie justifican que se le juzgue por ese delito.

Según lo declarado por los testigos a quienes interrogó el Fiscal Arturo Cintrón García, los sucesos que han dado lugar al proceso por ataque para cometer asesinato, se desarrollaron así:

En la madrugada del 18 de agosto de 1951, encontrándose Gloria Zayas Meléndez, con Francis Marrero, Lydia María Rivera y Joseph Frederick Owens en el Club Dominó, se presentó el interventor, medio tomado, y al verla la "agarró" por una mano diciéndole que no quería tener enemigos, a lo que ella contestó que no le interesaba tenerlo como amigo o como enemigo. A raíz de estas palabras el interventor y Gloria tuvieron un altercado. (Gloria explicó que meses antes de este incidente había tenido un disgusto con el interventor con motivo de una solicitud que le hizo para que le consiguiera una amiga.) Después de dicha disputa, salió Gloria del Club Dominó acompañada de Francis, Lydia, y Owens en dirección al automóvil del último, y cuando se dirigía hacia el vehículo, el interventor le hizo un disparo de revólver sin herirla, preguntando después si había alguien que quisiera salir en su defensa, a lo que nadie contestó. Gloria,

Francis, Lydia y Owens se dirigieron a casa de la primera, siguiéndolas el interventor. Al llegar cerca de la casa de Gloria, Owens detuvo su automóvil, saliendo todos, y casi inmediatamente se presentó el interventor, abandonó su carro y sin que le amenazara o agrediera Owens, disparó su revólver contra éste, hiriéndole.

Uno de los testigos que declaró ante el fiscal Cintrón García, manifestó que el interventor le llamó por teléfono pidiéndole que fuera a su oficina, diciéndole que "estaba envenenao y que le había disparado a la mujer y había cogido al americano". Preguntado por dicho funcionario si el interventor le había dicho que "había disparado a la señora Zayas y que había herido de bala al americano Joe Owens", contestó en la afirmativa.

El testimonio de Owens, por su parte, fué el siguiente: En la madrugada en que ocurrieron los hechos imputados al interventor se encontraba en su automóvil frente a la casa de dos muchachas después de haberlas traído desde el barrio "Los Meros" hasta allí, cuando llegó el interventor en su automóvil, deteniendo éste a alguna distancia de donde estaba estacionado el de Owens. Las muchachas corrieron gritando, "Aquí está". Owens sabía que momentos antes éstas habían tenido algunas dificultades con el interventor en el Bar Dominó, por lo cual estaban temerosas de que éste se vengara o hiciera algo, y por esa razón, él, Owens, salió de su automóvil, precipitándose en dirección al interventor para evitar que las viera. Al así hacerlo no tomó precauciones, y creyendo aquél que le iba a atacar, sacó su revólver y le apuntó mientras corría hacia él. Súbitamente el interventor disparó hacia su derecha (izquierda de Owens), como si intentara amedrentarle, pero en ese preciso momento él, Owens, viró a su izquierda, o en otras palabras, hacia la derecha del interventor, con la desgracia de que el disparo le hirió en la parte baja del estómago. A preguntas del Fiscal en cuanto a si el interventor sólo había querido amedrentarle, contestó en la afirmativa, diciendo que estaba seguro de ello, porque

no le había disparado directamente a él, sino a la derecha, y que estaba también seguro que el interventor pensó que él le iba a atacar. Por estas circunstancias declaró que era su propósito no proceder criminalmente contra aquél, añadiendo que estaba convencido que el interventor no había tenido intención de atacarle, y que todo había sido un accidente.

A pesar de que los testigos, con excepción de Owens, prestaron testimonio ante el Fiscal Cintrón García a raíz de los sucesos, a Owens, que era el perjudicado, no se le interrogó hasta dos meses después de los hechos, y un día antes de que (1) se presentara por el Fiscal Morales Torres la denuncia por acometimiento y agresión grave, (2) por Owens la moción solicitando su archivo y sobreseimiento por haber sido indemnizado de los daños sufridos, (3) se expresara por dicho fiscal su conformidad con dicha moción, (4) se dictara por el Tribunal Municipal la resolución y orden a ese efecto. En otras palabras, hoy se le toma testimonio a Owens y mañana se radica la denuncia por el fiscal, la moción sobre transacción por Owens, y se dicta por el tribunal la orden de sobreseimiento con el consentimiento del fiscal. Es evidente que cuando Owens declaró, ya tenía el propósito de que se exonerara al interventor y que su testimonio fué el primer paso en esa dirección. No obstante dicho propósito, aparece de la declaración de Owens que el interventor le apuntó con su revólver, disparando repentinamente a la derecha, desde donde se acercaba Owens, y que éste salió herido como consecuencia del disparo. No existe prueba de que Owens estuviera armado, o de que tratara de agredir al interventor. Por razones obvias, no podemos conceder valor alguno a la opinión o conclusión expresada por Owens de que todo fué un accidente.

El elemento esencial del delito de ataque para cometer asesinato, que le distingue del de acometimiento y agresión grave, es la intención de matar, que debe alegarse específicamente y probarse satisfactoriamente. *Pueblo* v. *Gómez*, 14 D.P.R. 127. Como la intención es una condición subjetiva,

su existencia sólo puede descubrirse por las circunstancias que concurran en el hecho delictivo. Artículo 12 del Código Penal; *Pueblo* v. *Bianchi, Jr. et al*, 18 D.P.R. 576; *Pueblo* v. *Astacio*, 23 D.P.R. 842; *People* v. *Cadd*, 60 Cal. 640.

En *United States* v. *Outerbridge*, 5 Sawy, 620, 27 Fed. Cas. 390, dice el Juez Field, que el efecto usual de disparar una pistola, a pocos pasos, hiriendo a una persona en la cabeza o espalda, es el de matarla, por lo cual, presume la ley que el que así actúa intenta matar. *People* v. *Besold*, 154 Cal. 363. En *Pueblo* v. *Alegría*, 36 D.P.R. 393, se sentenció al acusado por el delito de atentado a la vida. Apeló, y al confirmar la sentencia, manifestamos que "si ha de darse crédito a la prueba de cargo, el jurado tenía derecho a llegar a la conclusión de que el acusado tenía la intención de darle muerte al perjudicado. La ley y la jurisprudencia demuestran que de los actos de una persona puede deducirse su intención. Artículo 12 del Código Penal, 13 Cal. Jur. 397. *El uso deliberado de y el disparar una pistola contra un ser humano son circunstancias de las cuales el jurado tiene derecho a rendir un veredicto de culpabilidad*". (Bastardillas nuestras.) En vista de la presunción, de que "todo hombre intenta y tiene por objeto las consecuencias naturales y lógicas de sus actos", *Pueblo* v. *Gómez*, supra, *People* v. *Newcomer*, 118 Cal. 263, *People* v. *García*, 42 P.2d 1013 (Cal.), cuando se ataca a una persona con un arma mortífera en tal forma que natural, probable y razonablemente ha de ocasionar su muerte, o poner en peligro su vida, la intención de matar se presume. Esta presunción puede, desde luego, ser rebatida.

Terminaremos esta discusión preguntándonos ¿de qué delito se hubiera acusado al interventor de haber muerto Owens? "Una prueba muy común de la intención con que se ha cometido una agresión es la de investigar si el delito habría constituído asesinato en el caso de que la muerte hubiera sido el resultado del mismo. Si es así, entonces es una agre-

sión con la intención de matar o sea un atentado contra la vida; de lo contrario es una agresión de grado inferior". *Pueblo* v. *Gómez*, supra. Dijimos en este caso que esta prueba no requiere que la agresión, de ocurrir la muerte del agredido, "hubiera constituído el delito de asesinato en primer grado", siendo suficiente que constituyera "un asesinato en segundo grado, para dar a la agresión el carácter de un atentado contra la vida". Si Owens hubiera fallecido como consecuencia de la herida que recibió, al interventor se le hubiera procesado por el delito de asesinato. *Landreth* v. *State*, 171 N.E. 192 (Ind.); *Pueblo* v. *Carrión* 35 D.P.R. 901. Resolvimos en este último caso que "Al usar intencionalmente un arma peligrosa como un revólver y matar a una persona, la inferencia a deducir *prima facie* es que el acusado es culpable de asesinato."

Establecida la premisa de que las declaraciones prestadas en el curso de la investigación llevada a cabo por el ministerio público, demuestran la existencia de causa suficiente para acusar al interventor de ataque para cometer asesinato, delito *felony*, surge inevitable la consecuencia de que el Tribunal Municipal carecía de poder para conocer de los hechos y por lo tanto hacer uso de autoridad alguna bajo los artículos 445 y 446 del Código de Enjuiciamiento Criminal.

Hemos dicho que los citados artículos sólo conceden *discreción* para aprobar la condonación de *delitos menos graves*, y que aún en la esfera de tales delitos, no todos pueden ser transigidos. Es por tanto anacrónico el hablar de discreción *con respecto a la condonación de delitos de carácter grave, felony*, toda vez que el estatuto no la concede. En ese anacronismo o error incurrió el Tribunal Municipal al decir en la resolución y orden de archivo, que de la declaración de Owens se desprendían circunstancias que le movían dentro de su discreción, a creer que el acusado no había actuado con la intención criminal de cometer un felony, y también erró la

corte a quo al dar por sentado que dicho tribunal tenía discreción para aprobar la transacción. (⁷)

El poder del Tribunal Municipal no se extendía hasta el delito de ataque para cometer asesinato. En consecuencia,. no podía reducir el grado de dicho delito, que era el que prima facie revelaban las declaraciones prestadas ante el ministerio público, para considerarlo de carácter menos grave, y ya en ese terreno hacer uso de la pretendida discreción para transigirlo.

Independientemente de las anteriores consideraciones, repetimos que los artículos 445 y 446 del Código de Enjuiciamiento Criminal únicamente autorizan la transacción de ciertos delitos menos graves, y que ningún tribunal puede aprobar la condonación de uno que no sea de ese carácter, mediante el método de bajar el grado. Si sancionáramos ese proceder, estaríamos estableciendo un precedente manifiestamente contrario a derecho y sin duda alguna extremadamente peligroso y nocivo para la administración de justicia en el orden penal, puesto que permitiría que por ese método, sencillo, pero muy censurable, se desvirtuara el propósito que tuvo el legislador al aprobar los mencionados preceptos, y se condonaran delitos que no pueden ser transigidos.

 Es obligación del fiscal presentar acusación por el delito que, como cuestión de hecho y de derecho, justifique la prueba, y con esa obligación debe cumplirse, tanto para la protección de El Pueblo, como para la protección de aquéllos a quienes se les impute la infracción de las leyes penales. En *Pueblo* v. *Acosta*, 56 D.P.R. 138, resolvimos que es "deber del fiscal presentar en evidencia toda la prueba de que pueda valerse legalmente para establecer la culpabilidad de las personas contra las cuales ha formulado acusación", y que, "Si se admitiera que el fiscal está facultado para suprimir parte de su prueba, tendríamos que admitir que lo está también

---

(⁷) Aparentemente el Tribunal Municipal se basó exclusivamente en la declaración de Owens para formar la creencia de que el interventor no había intentado perpetrar un *felony*.

para suprimirla toda y para condonar cualquier delito mediante supresiones", añadiendo que "Los convenios de esta naturaleza son contrarios al interés público y como tales completamente nulos". Esta decisión es de aplicación por analogía. Es también contrario al interés público que se reduzca el grado del delito, sin que lo justifique la evidencia, para colocarlo dentro de la órbita de los que son transigibles, y exonerar al procesado.

 ·Siendo de opinión que el Tribunal Municipal no podía aprobar la transacción, carecen de importancia o valor los factores considerados por el recurrido para desestimar el segundo cargo de la acusación por ataque para cometer asesinato, en los cuales también se basa el interventor para sostener que debemos anular el auto de certiorari. No teniendo dicho tribunal poder para sancionar dicha transacción, es obvio que no podía adquirirlo, porque (a) se calificara el delito como menos grave, cuando, según las declaraciones prestadas en el curso de la investigación practicada por el ministerio público, era prima facie uno de carácter *felony*, (b) el perjudicado solicitara el archivo del proceso, (c) el Fiscal diera su consentimiento. 1 Freeman *on Judgments*, página 677. Es doctrina universal que si una corte no tiene poder para conocer de la materia objeto del litigio, las partes no pueden concedérsela por consentimiento.

 En vista de lo anterior, los procedimientos que se desarrollaron en el Tribunal Municipal y que culminaron en la pretendida exoneración del interventor y de los cuales surge y se desprende la falta de dicho poder, son a nuestro juicio, nulos. En *Pueblo* v. *Collazo*, supra, nos expresamos así, refiriéndonos a la actuación de una corte municipal aprobando la transacción que en dicho caso consideramos carente de efecto legal alguno:

"Se hace también referencia en el señalamiento de error al artículo 169 del Código de Enjuiciamiento Criminal que dispone:

" 'Artículo 169.—Si el acusado hubiera sido convicto o absuelto de una acusación, o estado en peligro alguna vez por la misma, tal convicción, absolución o peligro constituirá excepción perentoria a la nueva acusación por el delito imputado en la anterior, o por tentativa de cometerlo, o por cualquier delito necesariamente comprendido en la misma de que hubiera podido ser convicto en virtud de dicha acusación anterior.'

"Ninguna de las situaciones que tuvo en mente el legislador surge en este caso. La actuación de la Corte Municipal de San Juan, Sección Segunda, siendo como fué completamente nula, no puede invocarse. Es como si no existiera.

"En el caso de *State* v. *Bates*, 61 Pac. 905, 83 A.S.R. 768, 772, la Corte Suprema de Utah se expresó así:

" 'Una sentencia nula no es realmente una sentencia. Deja a las partes litigantes en la misma posición en que estaban antes del juicio. Las deja exactamente en la misma posición que si no se hubiera celebrado un juicio. Tal sentencia no faculta a nadie para hacerla cumplir.'

" ' "Una sentencia nula", dice el Sr. Black, "no es en realidad una sentencia. Es una mera nulidad. No está acompañada de ninguna de las consecuencias de una adjudicación válida ni tiene derecho al respeto que una sentencia se merece. No puede afectar, menoscabar ni crear derechos. En lo que se refiere a la persona contra quien se supone haberse dictado, no la obliga en modo alguno, no tiene el efecto de un gravamen sobre su propiedad, ni levanta un impedimento en su contra. En lo que concierne a la persona a cuyo favor se supone haberse dictado, ella no la coloca en mejor posición de la que ocupaba antes; no le concede ningún nuevo derecho y la tentativa de hacerla cumplir le colocará en una situación peligrosa. En lo que a terceros se refiere, no puede ser fuente de título ni un impedimento en la exigibilidad de sus derechos. No es necesario dar paso alguno para revocarla, dejarla sin efecto o anularla. Mas cuando se ofrece contra una persona, ésta puede atacarla y demostrar su ineficacia. No está sostenida por presunción alguna y puede ser atacada en cualquier procedimiento, directo o colateral." Black *on Judgments*, sección 170. En el presente caso todos los procedimientos de la corte sentenciadora, posteriores al archivo de la alegación del acusado, fueron enteramente nulos porque la corte, en ausencia de un jurado legal, no tenía jurisdicción para juzgar la causa, y por ende su sentencia y fallo fueron meras nulidades, y la confirmación de la sentencia por la corte suprema

no podía convalidarlos. Por tanto, esa sentencia podría ser considerada y tratada como una nulidad cuandoquiera, doquiera y por quienquiera fuese utilizada o usada como una sentencia válida." ' "

■ Necesaria consecuencia de lo anterior es también la de que se equivocó el tribunal recurrido al resolver que tales procedimientos no podían ser atacados colateralmente. *Restatement, Judgments*, sección 11, páginas 65 et seq.; 1 Freeman *on Judgments*, páginas 670, 677.

Siendo, como ya hemos dicho, nulas e inexistentes las actuaciones del Tribunal Municipal, la corte a quo erró al ordenar el archivo y sobreseimiento del segundo cargo de la acusación por el delito de ataque para cometer asesinato.

■ No tiene razón el interventor al sostener que la revocación de la resolución del tribunal recurrido produciría "una nueva exposición del acusado en violenta violación de sus derechos constitucionales". Por razones obvias, es claro que dicho interventor nunca estuvo en peligro como consecuencia de los procedimientos en el Tribunal Municipal. En cuanto al proceso por ataque para cometer asesinato, todo lo que ha ocurrido es que la acusación presentada por ese delito fué desestimada a solicitud del propio interventor. *Pueblo* v. *Pagán*, 23 D.P.R. 828; *Pueblo* v. *Reyes*, 55 D.P.R. 834; *People* v. *Webb*, 38 Cal. 467; *Ex parte Harron*, 217 Pac. 728; Dangel, *Criminal Law*, página 361; 1 Warton's *Criminal Law*, página 546.

Procede que anulemos la resolución impugnada. Ello no destruye o menoscaba ningún derecho del interventor. Al ser sometido a juicio, mediante el debido proceso de ley, por el delito de ataque para cometer asesinato, podrá interponer todas las defensas que legalmente tuviere. La prueba contenida en el sumario del Fiscal sometida al Tribunal Municipal ha sido examinada por nosotros al efecto de determinar el poder de dicho tribunal para actuar como lo hizo. No estamos decidiendo aquí sobre la culpabilidad o inocencia del in-

terventor. Esa misión corresponde al jurado, o al tribunal de derecho que le juzgue.

*En virtud de lo expuesto, se anula la resolución recurrida y se devuelve el caso a la sala correspondiente para ulteriores procedimientos de acuerdo con esta opinión.*

El Juez Asociado Sr. Ortiz no intervino.